## HUHN v. DAVIS

### Opinion of the Court

1. Insurance—Automobiles—Estoppel.

An estoppel arises when one by his act, representations, or admissions, or by his silence when he ought to speak out, intentionally or through culpable negligence induces another to believe certain facts to exist and such other rightfully relies and acts on such belief; therefore an automobile insurer is estopped to deny that an automobile is insured by it after the owner of the automobile consulted the agent of the insurer about insuring the automobile and was assured that coverage would begin immediately.

### Concurring Opinion

### Levin, J.

2. Appeal and Error—Trial Court—Findings of Fact.

The review of the record by the Court of Appeals in a case that was tried before a judge sitting without a jury should be limited to inquiry of whether the trial judge's findings are or are not clearly erroneous, and the Court of Appeals should not generally make its own finding on a disputed issue where none has been made by the trial judge; if additional fact finding is necessary, the case should be remanded to the trial court (GCR 1963, 517.1).

3. Insurance—Automobile Insurance—Newly-Acquired Automobile—Owned Automobile.

An old automobile that is inoperable and unlicensed is not a "private passenger automobile" for purposes of a clause in an automobile insurance policy which extended coverage to all

---

References for Points in Headnotes

[1] 7 Am Jur 2d, Automobile Insurance § 220.
[2] 5 Am Jur 2d, Appeal and Error § 839.
[3] 7 Am Jur 2d, Automobile Insurance § 99.
[4] 5 Am Jur 2d, Appeal and Error § 545.

*automobiles which were acquired by the insured during the term of the policy provided that the insurer insures all private passenger automobiles owned by the named insured on the date of acquisition of the newly-acquired automobile and the named insured notifies the company within 30 days following the date of acquisition.*

4. APPEAL AND ERROR—SAVING QUESTION FOR REVIEW.

   *A contention not raised in the trial court will not be considered by the Court of Appeals.*

Appeal from Jackson, John C. Dalton, J. Submitted Division 2 March 5, 1969, at Lansing. (Docket No. 4,950.) Decided July 30, 1969.

Complaint by John S. Huhn against Marie Davis and Donnis Butcher for damages resulting from an automobile collision. Judgment for plaintiff. Defendant brings garnishment proceedings against Progressive Mutual Insurance Company, insurer of defendant Davis, and against State Farm Mutual Automobile Insurance Company, insurer of defendant Butcher. Plaintiff seeks declaratory judgment adjudicating the liabilities of the parties. Garnishee-defendant State Farm Mutual Automobile Insurance Company found liable for the judgment. Garnishee-defendant State Farm appeals. Judgment vacated, and garnishee-defendant Progressive Mutual found liable.

*Kelly, Kelly & Kelly,* for defendant Donnis Butcher and garnishee-defendant State Farm Mutual Automobile Insurance Company.

*Rosenburg, Painter, Stanton & Bullen* (*Charles A. Nelson,* of counsel), for garnishee-defendant Progressive Mutual Insurance Company.

Before: J. H. Gillis, P. J., and Levin and Bronson, JJ.

J. H. Gillis, P. J.    Plaintiff was injured and his automobile was damaged when it was struck from the rear by an automobile owned by defendant Marie Davis and operated by her nephew, Donnis Butcher. At the time of the accident, defendant Butcher's policy of automobile insurance on his own car written by State Farm Mutual provided coverage in the event that he would operate any other motor vehicle that was not insured.    The question underlying this appeal is whether or not defendant Davis' automobile was insured by Progressive Mutual.    If her automobile was insured, Progressive Mutual would be primarily liable to plaintiff.    If her automobile was uninsured, then the liability provision of defendant Butcher's insurance covering uninsured vehicles would be effective and State Farm Mutual would be liable.

Judgment was entered against both defendants. When both defendants' insurers denied coverage, plaintiff garnished both of them and each filed a disclosure denying liability.    Plaintiff thereafter filed a motion for declaratory judgment.    The trial court entered judgment, after hearing, in which it was determined that State Farm Mutual, and not Progressive Mutual, was liable to plaintiff.    From that determination, State Farm Mutual has appealed.

Progressive Mutual had issued, before the date of the accident, a liability policy to Ingram Davis, husband of defendant-owner Marie Davis, insuring a 1953 Chevrolet titled in his name.    The provision of that policy here in dispute provides as follows:

"Definitions. 'Owned automobile' means

\* \* \* \* \* \* \* \* \*

"(c) a private passenger, farm or utility automobile ownership of any of which is acquired by the named insured during the policy period, provided,

"(1) it replaces a described automobile, or

"(2) the company insures all private passenger automobiles, farm automobiles and utility automobiles owned by the named insured on the date of such acquisition and the named insured notifies the company within 30 days following such date."

The car which defendant Butcher was driving at the time of the accident was a 1964 Ford which Mr. Davis had purchased a few days prior to the accident, title to which he had placed in his wife's name. At the hearing on plaintiff's motion for declaratory judgment, Mr. Davis testified that two days after he purchased the Ford he contacted the Collins insurance agency, with whom he did business, for the purpose of obtaining insurance for the Ford. The following excerpt is taken from the transcript of the hearing:

"*Q.* For what purpose did you go into the agency?

"*A.* To transfer the insurance from the 1953 Chevrolet to the 1964 Ford.

"*Q.* What did you tell Mr. Collins or Mr. Mesick?

"*A.* I told them that I bought a new car and had to have coverage on it, so they sold me coverage with the understanding I could take it out and drive it right then, is all they told me.

"*Q.* Do you know which of the two you spoke to about this?

"*A.* I spoke to Mr. Mesick.

"*Q.* What did Mr. Mesick tell you?

"*A.* He didn't tell me anything. He took the deposit on the—no, he—he told me that—that I was covered. I don't know if I paid the money that day. I suppose I did. I don't remember yet, but I would

have the receipt for it to home; but he told me that the Ford was covered right then.

\*    \*    \*    \*    \*    \*    \*    \*    \*

"*Q.* This accident occurred, I believe, on a Saturday night, on April 11?

"*A.* I believe it was.

"*Q.* When did you report it?

"*A.* Monday morning.

"*Q.* To whom did you report this accident?

"*A.* Mr. Mesick and Mr. Collins, and they sent me down to Michigan Claims Service.

"*Q.* Did they tell you anything with regard to coverage on your vehicle?

"*A.* Yes, they did, in the presence of Mr. Don Butcher and Mr.—the plaintiff, Mr. Huhn. They told me that I was covered and that I should go down to Michigan Claims Service and file a claim, which I proceeded to do."

Subsequently, Mr. Davis was notified by Progressive Mutual that there was no coverage for the accident with the Ford. It was the position of Progressive Mutual that the Ford was not an "owned automobile" under the policy in that Mr. Davis continued to drive the Chevrolet and, therefore, the Ford was not a replacement vehicle. The company also contended that it was not bound by any representations of its agents because the furnishing by Mr. Davis of the serial number of the Ford, an alleged prerequisite to coverage, did not occur until after the accident.

The trial court resolved the matter as follows:

"Practically this self-same language (of the insurance contract) was construed in the case of *State Farm Mutual Automobile Insurance Company* v. *Shaffer* (1959), 250 NC 45 (108 SE2d 49, 54) and in which was stated:

" 'It is our opinion that the replacement vehicle is one the ownership of which has been acquired

after the issuance of the policy and during the policy period, and it must replace the car described in the policy, which must be disposed of or be incapable of further service at the time of the replacement.'

"The 1964 Ford thus could not possibly be a replacement for the 1953 Chevrolet, and the 1964 Ford was not owned by the named insured in Progressive's policy.

"The 1964 Ford was not covered by the Progressive policy, and liability is solely that of State Farm under its policy on Butcher, and it shall pay the same forthwith."

Under the policy, " 'named insured' means the individual named in item 1 of the declarations and *also includes his spouse, if a resident of the same household.*" (Emphasis supplied.) Thus, any coverage in the name of one spouse alone would also include the other.

We agree that the 1964 Ford was not, under the policy, a replacement for the 1953 Chevrolet. This fact is not, however, dispositive of the issue in this case. The record reveals that Mr. Davis informed his insurance agent that he desired the Ford to be insured. His testimony that he was given unequivocal assurances on several occasions that the Ford was, in fact, insured is unrefuted. There is no clear showing that the furnishing of the serial number was either set out by the insurance agent or understood by Mr. Davis to be a condition of coverage. It is unclear whether Mr. Davis intended to actually transfer the insurance from the Chevrolet to the Ford, thus leaving the Chevrolet uninsured, or whether he intended to obtain additional insurance to cover both cars. Notwithstanding whether or not the Ford was a replacement for the Chevrolet, Mr. Davis reasonably relied on the representations of Progressive Mutual's agents that the Ford was in-

sured. As stated in *Holt* v. *Stofflet* (1953), 338 Mich 115, 119:

"'It is a familiar rule of law that an estoppel arises when one by his acts, representations, or admissions, or by his silence when he ought to speak out, intentionally or through culpable negligence induces another to believe certain facts to exist and such other rightfully relies and acts on such belief, so that he will be prejudiced if the former is permitted to deny the existence of such facts.'"

The issue of estoppel having been briefed by both parties, our determination is made pursuant to GCR 1963, 820.1(7).

There is testimony which indicates that the insurance agent believed Mr. Davis had replaced the Chevrolet with the Ford and that the only car to be insured with Progressive Mutual was the Ford. In holding Progressive Mutual primarily liable to plaintiff, we are holding the company to no more of a burden than its agents anticipated, namely, that the Ford, if no other car, was insured.

The order of the trial court will be vacated and an order entered consistent with this opinion.

BRONSON, J., concurred.

LEVIN, J. (*concurring*). Ingram Davis, husband of defendant Marie Davis, did testify that when the 1964 Ford was purchased he approached defendant Progressive Mutual Insurance Company's agent "to transfer the insurance from the 1953 Chevrolet to the 1964 Ford" and that the agent "sold me coverage with the understanding I could take it out and drive it right then." He also testified that after the accident involving the 1964 Ford the agent told him "that I was covered and that I should go down to Michigan Claims Service and file a claim."

However, the Progressive agent with whom Mr. Davis dealt testified that when Mr. Davis approached him to inquire regarding a transfer of the insurance, he "would have told him something to the effect to get me the serial numbers as soon as he can and we will send in the papers." The agent explained that "in Progressive we have no binding authority" and that "when I make a transfer, I make it effective when I send in the serial number so we can properly identify the car."

The majority hold that "Mr. Davis reasonably relied on the representations of Progressive Mutual's agents that the Ford was insured." The trial judge's written opinion contains no findings on the question whether Progressive's agent represented to Mr. Davis that the 1964 Ford was insured. In my opinion, where, as here, a case is tried before a judge sitting without a jury, our review of the record ordinarily should be limited to inquiry whether the trial judge's findings are or are not clearly erroneous (GCR 1963, 517.1). We should but rarely, and this is not an appropriate case for making an exception, make our own finding on a disputed issue where none has been made by the trial judge. If additional fact finding is required, the case should be remanded to the trial judge for that purpose.

Although I cannot agree with a disposition of this case based on findings of fact made by this Court, I agree with my colleagues, for other reasons which I will now state, that the newly-acquired 1964 Ford was insured by the Progressive policy at the time of the accident and, accordingly, I agree with the result the majority has reached.

The accident occurred within a few days after the 1964 Ford had been purchased in Mrs. Davis' name. The "newly acquired automobile" clause of the Progressive policy includes within the definition

of "owned automobile" a private passenger automobile ownership of which "is acquired by the named insured" provided that Progressive insures "all private passenger automobiles" owned by the named insured on the date of acquisition of the newly-acquired automobile and the named insured notifies the company within 30 days following the date of acquisition.

It is not disputed that Progressive was notified of the fact that Mrs. Davis had acquired a 1964 Ford within 30 days of its acquisition. The trial judge concluded that the 1964 Ford was, nevertheless, not covered because it "was not owned by the named insured in Progressive's policy." In this he erred because the policy expressly provides that the " 'named insured' means the individual named in item 1 of the declarations [in this case Ingram Davis] and also includes his spouse, if a resident of the same household." The testimony showed that Ingram Davis was married to defendant Marie Davis and that they lived together in the same household. Thus, Mrs. Davis as well as Mr. Davis was a named insured in Progressive's policy.

Mr. Davis also owned a 1957 Dodge which was not insured by Progressive. Progressive claims that the newly-acquired automobile clause does not apply because Progressive did not insure "all private passenger automobiles" owned by the Davises on the date that the 1964 Ford was acquired. However, the trial judge found that the 1957 Dodge was inoperable and never licensed in 1964, which finding is well supported in the record and not disputed. Thus, the 1957 Dodge "had ceased to be an automobile *in fact*" and the failure of the Davises to insure the 1957 Dodge did not make inapplicable the newly-acquired automobile clause of the Progressive policy. *Drysdale* v. *State Farm Mutual Insurance*

*Company* (1968), 13 Mich App 13, 15.* (Emphasis in original.) Accordingly, the 1964 Ford was a private passenger automobile covered by the policy's newly-acquired automobile clause.

Neither Mr. Davis' action in seeking a transfer of the liability coverage under the Progressive policy from the 1953 Chevrolet to the 1964 Ford nor his failure to inform the agent that the 1964 Ford had been purchased in Mrs. Davis' name constituted a waiver of the Davis' rights under the newly-acquired automobile clause.

Alternatively, Progressive asserts that it should not be held liable because of Mrs. Davis' asserted right to indemnification from the driver, Donnis Butcher, who was insured for liability by defendant Sate Farm Mutual Insurance Company. This contention was not raised in the trial court and we are not obliged to consider it on this appeal.

---

* The Progressive policy contained the following additional definition: " 'Private passenger automobile' means a four-wheel private passenger, station wagon or jeep type automobile."