## In re GRANADA PARTNERSHIP SECURITIES LITIGATIONS.

### MDL No. 837.

United States District Court,
S.D. Texas,
Houston Division.

April 27, 1992.

## AMENDED MEMORANDUM

HARMON, District Judge.

This Amended Memorandum supersedes the Memorandum of even date to correct the contents of footnote 4 on page 3. Pending before the Court are Class Plaintiffs' Motion For Final Approval of Settlements (Document # 383) and Opposition To Plaintiffs' Motion For Final Approval of Settlements (Documents ## 409, 414, and 415) submitted by Defendants Ernst & Young and Ernst & Whinney, First of Michigan Corporation, and Keck, Mahin, and Cate (the "Non–Settling Defendants"). Having considered the motion, the opposition, the responses, the replies, and the applicable law, the Court is of the opinion that the Class Plaintiffs' Motion For Final Approval of Settlements should be granted in part and denied in part. Plaintiffs' proposed settlements should be approved and the Non–Settling Defendants are entitled

to a Proportionate Fault Credit in exchange for the issuance of a Bar Order.

## I. RELEVANT FACTUAL BACK-GROUND

This consolidated action arose from an offer and sale of interests in seven Texas limited partnerships by Granada Corporation and its affiliates (the "Granada Partnerships"). Approximately 27,500 limited partners invested in the Granada Partnerships. Of the 27,500 investors, a substantial number of Plaintiffs have brought suit against the defendants (Granada Corporation, its affiliates, directors, officers, and a number of "experts" hired by Granada Corporation) in four actions. On July 26, 1990, Judge Schnacke ordered the four actions transferred to this Court.[1]

In this consolidated action, plaintiffs allege that the Defendants violated: (1) Section 10(b) and Rule 10b–5 as promulgated under the Securities Exchange Act of 1934(2) the Racketeer Influenced and Corrupt Organization Act (the "RICO" claim) 18 U.S.C. §§ 1962(a), (b), (c), and (d); and (3) various state law causes of action (*e.g.,* common law fraud, negligence, breach of fiduciary duty, violations of the Texas Deceptive Trade Practices Act, and civil conspiracy). Prior to the enactment of the Comprehensive Deposit Insurance Reform and Taxpayer Protection Act, on October 9, 1991, pursuant to *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* —— U.S. ——, ——, 111 S.Ct. 2773, 2782, 115 L.Ed.2d 321 (1991) the Court dismissed plaintiffs' Section 10(b) and Rule 10(b) 5 claims. The remaining claims in the case are: Section 12(2) claims of the Securities Exchange Act of 1933, RICO and state law claims.

---

**1.** The four actions were: the *Gummere, Preston, Melcher,* and *Shick* actions. Two actions were pending in the Western District of Michigan, *Preston v. Granada Management Corp.,* No. 1:90–CV–100 (W.D.Mich. filed Feb. 1, 1990) and *Gummere v. Granada Management Corp.,* No. 1:89–CV–1208 (W.D.Mich. filed Dec. 27, 1989);

the third action was pending in the Southern District of Texas *Melcher v. Granada Management Corp.,* No. 90–0214 (S.D.Tex. filed Jan. 24, 1990); the Fourth action was pending in the Northern District of California, *Shick v. Granada Corp.,* No. 89–4308 (N.D.Cal. filed Dec. 6, 1989).

On February 5, 1992 the Granada defendants,[2] Reynolds, White, Allen & Cook[3], Donald R. Looper and Grant Cook,[4] (the "Settling Defendants") and the proposed class plaintiffs in the *Gummere, Preston,* and *Shick* actions submitted their preliminary proposed settlements to the Court. On February 6, 1992, the Court signed an order granting preliminary approval of the proposed settlements.

On March 23 and 24, 1992, the Court held a Final Approval hearing. At the hearing, the Court heard the arguments of counsel for the class plaintiffs, the settling defendants, and the Non–Settling Defendants.

The class plaintiffs argue that 1) the proposed settlements are fair and the Non–Settling Defendants lack standing to object to the settlements; 2) the Court should approve the proposed settlements which bar contribution and indemnity claims against the settling defendants ("Bar Order"), and the Bar Order does not prejudice the Non–Settling Defendants; 3) until a judgment is entered against one or more Non–Settling Defendants the Court need not decide the setoff methodology issue; and 4) if the Court elects now to choose the setoff methodology to be used in this case, then it should choose the *pro tanto* setoff method.

The Non–Settling Defendants assert that 1) they have standing to object to approval of the final settlements which affect their rights; 2) entry of the requested Bar Order would substantially prejudice their rights; 3) in the event the Court determines that a Bar Order is appropriate, the setoff methodology is ripe for determination and should be resolved prior to the resolution of the request for final approval of the proposed settlements; and 4) if the Court elects now to choose the setoff methodology to be used in this case, then it should

choose the proportionate fault setoff method.

## II. THE APPLICABLE LAW

### A. The Non–Settling Defendants Have Standing to Object to Approval of Settlements

Although it has been said that a non-settling party has no standing to object to a settlement between other parties, where the rights of one who is not a party to a settlement are at stake, the fairness of the settlement to the settling parties alone is insufficient to gain court approval. *See In re Masters Mates & Pilots Pension Plan and IRAP Litigation,* 957 F.2d 1020 (2nd Cir.1992). *See Waller v. Financial Corp. of America,* 828 F.2d 579, 583 (9th Cir.1987).

The terms under which the bar orders are imposed must be "fundamentally fair and equitable" to the non-settling defendants. *See Nelson v. Bennett,* 662 F.Supp. 1324, 1338 (E.D.Cal.1987). "If the right to contribution is extinguished by a bar order, the credit offset must adequately compensate the non-settling defendant for the barring of its contribution claim." *See USF & G v. Patriots Point Development Authority,* 772 F.Supp. 1565, 1572 (D.S.C.1991).

In the present case, the class plaintiffs are asking the Court to impose a bar order against the Non–Settling Defendants and approve the settling defendants' assignment to the Plaintiffs of all claims possessed by the settling defendants against the Non–Settling Defendants. The Bar Order cuts off Non–Settling Defendants' rights of contribution and indemnity from the settling defendants, and precludes the Non–Settling Defendants from pursuing their rights against non-parties to this litigation. Non–Settling Defendants argue

**2.** Granada Corporation, Granada Management Corporation ("GMC"), Granada Land and Cattle Company, Inc. ("CLCC"), Granada Acquisitions, Inc. ("GAI"), Granada Agricultural Property, Inc. ("GAPI"), Granada Cattle Service, Inc. ("GCS"), Granada Development Corporation ("GDC"), Granada Genetics, Inc. ("GGI"), Granada Foods Corporation ("GFC"), Granada Biosciences, Inc. ("GBI"), ACF, Inc., and Immuno-Modulators Laboratories, Inc., Dumas Cattle Feeders, Inc., Granada Realty, Inc., Granada Financial Services, Inc. ("GFS"), David G. Eller, James M. Eller, Grant Cook (in his capacity as a

director), Thomas L. Easley, Douglas L. McKinna, Jr., Clarence Pett, Christopher T. Zakrzewski, Robert E. Wilkins, Charles T. Rognon, David W. Pace, Michael Homeyer, L. Jim Wallace, Dennis R. Konzcal and John Watson.

**3.** Formerly known as Reynolds, Allen & Cook, P.C., f/k/a Reynolds, Allen, Cook, Pannill & Hooper, Inc.

**4.** In the proposed settlements, Grant Cook is released in all capacities other than in his capacity as a partner of Keck, Mahin & Cate.

that since their rights to contribution and indemnity are extinguished, the credit offset must adequately compensate them.

B. Entry of the Requested Bar Order Would Substantially Prejudice the Rights of The Non–Settling Defendants

Section 11 of the Securities Act of 1933 expressly preserves a right of contribution, and it is well established that there is a right of contribution for parties jointly liable for violating Section 10(b) and Rule 10b–5. *See, e.g., In re Jiffy Lube Securities Litigation,* 927 F.2d 155 (4th Cir.1991); *Smith v. Mulvaney,* 827 F.2d 558 (9th Cir. 1987). *See also Huddleston v. Herman & MacLean,* 640 F.2d 534 (5th Cir.1981), *rev'd. on other grounds,* 459 U.S. 375, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983). Allowing such a right of contribution advances two desirable goals: the desire to be fair in allocating the burden of liability between co-defendants, and the desire to deter wrongdoing by impressing upon potential defendants the likelihood they will face some liability for wrongdoing even if not sued by the plaintiff in the first instance. *See generally Cooper Stevedoring Co. v. Fritz Kopke, Inc.,* 417 U.S. 106, 111, 94 S.Ct. 2174, 2177, 40 L.Ed.2d 694 (1974).

Plaintiffs have sued all defendants for alleged violations of state common law, including claims for negligence, breach of fiduciary duty, fraud and violations of the Texas Deceptive Trade Act. Under state law, the Non–Settling Defendants have rights of contribution, and federal courts in similar cases have thus either refused to bar contribution claims relating to state law causes of action, or have done so with the judgment reduction feature recognized in the forum state.[5] Absent the entry of

such a bar order, the Non–Settling· Defendants would have many mechanisms available to them to apportion liability based on fault. Entry of the requested Bar Order thus would substantially prejudice the rights of the Non–Settling Defendants. They have an interest in the resolution of the request for final approval of the proposed settlements.

C. The Setoff Methodology Should be Resolved At the Present Time

■ The setoff methodology must be resolved at the present time, because the choice of setoff method helps the Non–Settling Defendants to determine to a large extent the manner in which their defense should be made at trial.[6] *See In re Jiffy Lube Securities Litigation,* 927 F.2d at 161. Failure to designate a setoff method exposes the Non–Settling Defendants to the risk of receiving inadequate credit for the contribution bar imposed on it. *Id.* at 161. There is certainly some risk involved to all parties, the plaintiff, the settling, and the non-settling defendants, but choosing a method at least allows the parties to know what the nature of that risk is. *See id.; In re Masters Mates & Pilots Pension Plan and IRAP Litigation,* 957 F.2d at 1025–26. Federal law and fundamental concepts of due process require this court to decide the setoff credit method now and before resolution of plaintiffs' request for final approval.

D. The Non–Settling Defendants Are Entitled to a Proportionate Fault Credit In Exchange for the Issuance of a Bar Order

1. *The Setoff Methods*

■ In *In re Jiffy Lube Securities Litigation,* 927 F.2d at 160–161 n. 3, the

---

**5.** *See, e.g., In re Atlantic Financial,* 718 F.Supp. 1012 (D.Mass.1988) (indemnity for state claims not barred, contribution for state claims barred in accordance with Massachusetts law). With respect to indemnification rights, the Michigan law provides for the right of indemnification under certain circumstances. *See, e.g., Williams v. Litton Systems, Inc.,* 164 Mich.App. 195, 416 N.W.2d 704 (1987) (common law and implied contractual indemnity); *Grayson v. Chambersburg Engineering Co.,* 139 Mich.App. 456, 362 N.W.2d 751 (1984) (implied contractual indem-

nity); *Skinner v. D–M–E Corp.,* 124 Mich.App. 580, 335 N.W.2d 90 (1983) (describing three sources of indemnity: common law, implied contract, and express contract).

**6.** For example, the extent of wrongdoing of the settling defendants in relation to the Non–Settling Defendants's liability is either highly relevant (under the "proportionate" rule), minimally important (under the "pro rata" rule), or not important at all (under the "pro tanto" rule).

Fourth Circuit set out the three most common setoff methods:

(1) *Pro tanto,* in which the judgment is reduced by the amount paid by the settling defendants; the non-settling defendant pays the remainder. This method exposes the non-settling defendant to liability for any deficiency in the judgment, so a hearing focusing on fairness of the settlement to the non-settling defendant is required for approval.

(2) *Proportionate fault,* in which the jury assesses the relative culpability of both settling and non-settling defendants, and the non-settling defendant pays a commensurate percentage of the judgment. Here, the plaintiffs bear the risk of a "bad" settlement and thus have incentive to obtain a settlement accurately apportioned according to fault.

\* \* \* \* \* \*

(3) *Pro rata,* in which the judgment amount is simply divided by the number of defendants, settling and non-settling, that are found liable. Relative culpability is not an issue. Since the settling defendants will already have satisfied their debt to plaintiffs, the non-settling defendant may have to pay a share larger than theirs if the judgment is greater than the settlement amount. Conversely, the non-settling defendant will pay less if the judgment is less than the settlement amount.[7]

*See Franklin v. Kaypro Corp.,* 884 F.2d 1222 (9th Cir.1989); *see USF & G v. Patriots Point Development Authority,* 772 F.Supp. at 1569–70.

## 2. *The Proportionate Fault Rule*

■ The Ninth Circuit Court of Appeals in *Franklin v. Kaypro Corp.,* 884 F.2d 1222 (9th Cir.1989) asserts that the proportionate fault rule is the most equitable setoff method if a non-settling defendant is to be enjoined from pursuing his contribution and/or indemnification rights against the settling defendants. This method satisfies three goals: 1) the statutory goal of punishing each wrong doer as espoused by Section 11 of the Securities Act of 1933,[8] the equitable goal of limiting liability to relative culpability, and the policy goal of encouraging settlement. *Id.* at 1231. This approach prevents the plaintiff from engaging in collusion with certain defendants by accepting a low partial payment to fund further litigation with no diminution of the total amount eventually received. *Id.* at 1230. The goal of equity is also satisfied because the settling defendants pay the amount to which they voluntarily agree, and the bar order on further contribution extinguishes further risk on their part. *Id.* at 1230. This approach leaves the burden of proof intact because it does not force the burden of proof on the non-settling defendants. *Id.* at 1230. This approach also satisfies the policy goal of encouraging settlements. The settling defendants will be protected by the bar order. The non-settling defendants never pay more than they would if the parties had gone to trial. The plaintiff can obtain an amount certain in the present and avoid the uncertainties and limitations of winner-take-all. *Id.* Theoretically he will eventually be made whole because his financial motive will force him vigorously to press his arguments at trial. *See Id.;* D. Provine, *Settlement Strategies for Federal District Judges,* 1–2 (1986). Of course there is a risk in the proportionate fault rule. The plaintiff may not be made whole if he makes a bad assessment of the settling defendants' fault and receives a small sum from them only to discover at trial that the settling defendants are found to be primarily responsible. The

---

**7.** Recently one court, in analyzing the case law pertaining to proportionate fault, has added to the three common setoff methods by finding precedent for two proportionate fault rules, one of which it calls the "pure comparative fault" rule to distinguish it from what it calls the "capped comparative fault" rule, the difference being that under the latter the non-settling de-

fendants always will receive at least the benefit of what others have paid in settlement, whatever the relative degrees of fault. *MFS Municipal Income Trust v. American Medical Internat'l, Inc.,* 751 F.Supp. 279, 282 (D.Mass.1990).

**8.** See the discussion regarding Section 11, *supra.*

risk, however, is where it belongs, on the plaintiff who has desired voluntary to settle. *Franklin v. Kaypro Corp.*, 884 F.2d at 1231. It is the plaintiff who can avoid this risk altogether by avoiding settlements or by prudently making the assessment of the degree of fault of all defendants. *Id.* Under the proportionate fault approach, reasonable settlements are not discouraged; only unreasonable ones.

### 3. The Pro Tanto Rule

■ The plaintiffs argue that this Court should apply the *pro tanto* approach. This approach does not have the virtue of overall simplicity as plaintiffs asserted, since its adoption requires a separate fairness hearing at the time of partial settlement to determine that the settlement was made in good faith and is fair to the non-settling party. *See Kaypro*, 884 F.2d at 1230. Among the factors which would support a "fairness" finding are: (1) whether a larger judgment against the settling defendants would have been collectible; (2) the strength of plaintiffs' liability case against the settling defendant; (3) the settling defendant's relative culpability; and (4) the participation of a magistrate or judge in settlement negotiations. *See Atlantic Financial*, 718 F.Supp. at 1017–23.

The Ninth Circuit rejected the *pro tanto* approach in favor of the proportionate fault rule primarily because of the former's requirement of an advance hearing on culpability. "In the first place, a good faith hearing 'means bogging down the settlement process in a miniature trial before

trial.' [Citation omitted.] In order to be truly efficacious, the good faith hearing would require a full evidentiary hearing on all of the parties' relative culpabilities. This would negate many of the benefits of settlement." *Id.* at 1230 (citing *Donovan v. Robbins*, 752 F.2d 1170, 1181 (7th Cir. 1985)).

In the instant case, because the Non–Settling Defendants are sued in the *Gummere* and *Shick* actions, the law of the Ninth and Sixth Circuits apply. The Ninth Circuit is the only Circuit Court which has decided upon the proper reduction feature to apply in a securities bar order case. There is no authority in the Sixth Circuit for the entry of any kind of bar order. The setoff method espoused by the Ninth Circuit appears to be the most logical one to be used in exchange for the entry of a bar order.[9]

Adoption of the *pro tanto* rule will neither simplify the proceedings nor adequately compensate the non-settling party in exchange for a bar order. The proportionate fault apportionment does both. Plaintiffs' proposed settlements should be approved and the Non–Settling Defendants are entitled to a Proportionate Fault Credit in exchange for the issuance of a Bar Order.

## ORDER AND JUDGMENT OF FINAL SETTLEMENT APPROVAL CERTAIN LAWYER DEFENDANTS SETTLEMENT.

The motion of the Plaintiff Settlement Class[1] and Certain Lawyer Defendants[2],

---

**9.** Although the Fifth Circuit Court of Appeals has never ruled on the issue of an appropriate judgment reduction method in bar order cases, it has approved in dicta proportionate fault relating to partial settlements, as here. More specifically, in *Leger v. Drilling Well Control, Inc.*, 592 F.2d 1246, 1248 (5th Cir.1979), the Fifth Circuit held that, in the context of a partial settlement, the non-settling party was entitled to a proportionate reduction of the jury verdict based on degree of fault. The Court opined:

In such a case, the judgment awarded to the claimant against the nonsettling defendant is credited with the dollar amount represented by the proportion of negligence, if any, attributed to the settling parties.

**1.** As that term is defined in the Settlement Agreement and excluding those individuals who

opted out of the class, in accordance with the terms of the Notice of Settlement Class Certification and Proposed Partial Settlements, signed February 6, 1992.

**2.** Reynolds, Allen & Cook, Inc., a Texas corporation, d/b/a Reynolds, White, Allen & Cook, Inc., a Texas corporation, f/k/a J. Reynolds, Inc., a Texas corporation, f/k/a Reynolds, Allen & Cook, P.C., f/k/a Reynolds, Allen & Cook, Incorporated, f/k/a Reynolds, Allen, Cook, Pannill & Hooper, Incorporated, including all past or present shareholders, directors, employees, and agents of such corporation other than Grant Cook; Donald R. Looper; Looper, Reed, Mark & McGraw, Inc., a Texas corporation, f/k/a Looper, Reed, Ewing & McGraw, Inc., including all past or present shareholders, directors, em-

came on regularly for hearing before this Court on March 23, 1992, at the hour of 9:00 a.m. All known members of the Plaintiff Settlement Class were notified of the hearing, and of their rights and responsibilities in relation to the settlement approval process, by mailing to them of the Court-approved *Notice of Settlement Class Certification and Proposed Partial Settlements* and by the publication of a *Summary Notice of Settlement Class Certification and Proposed Partial Settlements* in the *Wall Street Journal.*

This Court has read, heard and considered all timely-submitted comments in connection with the proposed Settlement (the "Settlement") as set forth in the Settlement Agreement between the Plaintiff Settlement Class and Certain Lawyer Defendants (the "Settlement Agreement"). This Court has evaluated the proposed Settlement under the criteria set forth in Section 30.44 of the *Manual for Complex Litigation 2d,* considered the presentation of counsel and the relative merits of the claims and defenses herein, the complexity of the case, the likely duration and expense of the trial, and the risks attendant thereto and in connection with any appeal.

This Court has determined that the proposed Settlement, which provides for the release of all Settled Claims (as that term is defined in the Settlement Agreement), in exchange for the payment of $6,200,000.00 and other consideration, is fair, reasonable, and adequate under the circumstances and in light of the risk that Certain Lawyer Defendants may pay less in settlement than if they were found liable after trial. This Court has determined that the interests of the Plaintiff Settlement Class, as a whole, will be better served if the claims against these Defendants are resolved by the Settlement rather than pursued.

This Court has further determined that the Settlement embodied in the Settlement Agreement is entered into in good faith and that there is no evidence of collusion, fraud or tortious conduct by any of the parties to the Settlement Agreement aimed at causing injury to the interests of the Non–Settling Defendants (as defined in the Settlement Agreement), any potential defendants or others. Accordingly, based upon these findings, and good cause therefore being shown to this Court's satisfaction, it is hereby

ORDERED, ADJUDGED and DECREED that:

1. The Settlement is hereby approved pursuant to Federal Rule of Civil Procedure 23(e) and confirmed as being fair, adequate and reasonable; the parties thereto are directed to consummate this Settlement in accordance with the terms and conditions set forth in the Settlement Agreement; and the Clerk of the Court is directed to enter this final judgment.

2. This action and the claims asserted therein against Certain Lawyer Defendants are hereby dismissed with prejudice, and Certain Lawyer Defendants, Cigna Insurance Company, its predecessors, successors and subsidiaries, and Texas Lawyers' Insurance Exchange, its predecessors, successors and subsidiaries, are hereby released and discharged from any and all liability under or based upon the Settled Claims (as defined in the Settlement Agreement). This Final Judgment shall be final and conclusive with respect to the foregoing release and discharge.

3. Class Plaintiffs, whether directly, representatively, derivatively, or in any other capacity, are hereby severally and permanently enjoined and barred from instituting or further prosecuting any action or proceeding in any court or tribunal of this or any other jurisdiction based upon any claim settled by the Settlement Agreement, all of which claims are hereby declared to be released, discharged, compromised, settled and extinguished.

4. Any claim Certain Lawyer Defendants may have or have had against any Settlement Class Member arising in connection with the institution and prosecution of this litigation is hereby released and Cer-

ployees and agents of such corporation; and Grant Cook, in all capacities other than in his capacity as a director for Granada entities and

other than in his capacity as a partner at Keck, Mahin & Cate.

tain Lawyer Defendants are hereby barred and permanently enjoined from prosecuting, against any member of the Settlement Class, any claim, cause of action, or lawsuit which they had or have based upon the institution and prosecution of this litigation.

5. All claims for contribution, indemnification, or reimbursement, however denominated, against Certain Lawyer Defendants arising under federal or state law, including those based in tort, contract, or statute, or any other body of law, in favor of persons, including the Non–Settling Defendants, who are asserted to be or who may be joint tortfeasors or wrongdoers, however denominated, with Certain Lawyer Defendants, are extinguished, discharged, satisfied, barred, and enjoined, with the exception, however, that should any parts of the case involving the Non–Settling Defendants be tried, the jury will assess the relative culpability of both the settling and Non–Settling Defendants; and the Non–Settling Defendants will pay only a commensurate percentage of the judgment according to their proportionate fault.

6. Judgment entered pursuant hereto shall be deemed final pursuant to Federal Rule of Civil Procedure 54(b).

7. This Court reserves jurisdiction over:

a. Implementation of this Settlement and distribution of the Net Settlement Fund (as that term is defined in the Settlement Agreement) to Settlement Class Members;

b. Hearing and determining application for Plaintiff Settlement Class's attorneys' fees, costs, expenses, including expert fees and costs, and interest;

c. The *Gummere, Shick, Preston* and *Melcher* actions until the judgment contemplated hereby has become effective and

each and every act agreed to be performed by the parties hereto shall have been performed pursuant to the Settlement Agreement;

d. Any attempts by any person to assert any claims barred in accordance with this Order;

e. All parties to the Settlement Agreement including all Plaintiff Settlement Class Members for the purpose of enforcing and administering this Settlement Agreement; and

f. Non–Settling Defendants in connection with the continuing prosecution of the Reserved Claims (as that term is defined in the Settlement Agreement).

## ORDER AND JUDGMENT OF FINAL SETTLEMENT APPROVAL and PERMANENT INJUNCTION (GRANADA DEFENDANTS SETTLEMENT)

The motion of the Plaintiff Settlement Class (as that term is defined in the Settlement Agreement) and the Granada Defendants [1], came on regularly for hearing before this Court on March 23, 1992 at the hour of 9:00 a.m. All known members of the Plaintiff Settlement Class were notified of the hearing, and of their rights and responsibilities in relation to the settlement approval process, by mailing to them of the Court-approved *Notice of Settlement Class Certification and Proposed Partial Settlements* and by the publication of a *Summary Notice of Settlement Class Certification and Proposed Partial Settlements* in the *Wall Street Journal.*

This Court has read, heard and considered all timely-submitted comments in connection with the proposed Settlement (the "Settlement") as set forth in the Settlement Agreement between the Plaintiff Settlement Class and Granada Defendants (the

---

**1.** The Granada Defendants are: Granada Management Corporation, ACF Inc., Granada Acquisitions, Inc., Granada Agricultural Properties, Inc., Granada Agricultural Companies, Inc., Granada Land and Cattle Company, Granada Cattle Services, Inc., Granada Development Corporation, Granada Genetics, Inc., Granada Financial Services, Inc., Granada Realty, Inc., Immuno–Modulator Lab, Inc., Granada Corporation, Inc., Dumas Cattle Feeders, Granada Foods

Corporation, Granada Biosciences, Inc., Granada 1, Granada 2, Granada 3, Granada 4, David G. Eller, James M. Eller, Jr., Douglas L. McKinna, Thomas A. Easley, Clarence A. Pett, John A. Watson, Michael L. Homeyer, L. James Wallace, Christopher T. Zakzrewski, Thomas B. Dawson, David W. Pace, Dennis R. Konczal, Robert E. Wilkins, Charles T. Rognon, and Grant Cook, solely in his capacity as a director of Granada entities.

"Settlement Agreement"). This Court has evaluated the proposed Settlement under Fed.R.Civ.P. 23(e) and the criteria set forth in Section 30.44 of the *Manual for Complex Litigation 2d*, considered the presentation of counsel and the relative merits of the claims and defenses herein, the complexity of the case, the likely duration and expense of the trial, and the risks attendant thereto and in connection with any appeal.

This Court has determined that the proposed Settlement, which provides for the release of the claims of the Plaintiff Settlement Class as against the Granada Defendants, in exchange for the payment of the balance of the Granada Defendants' National Union Insurance Policy No. GPL 168 77 83; RIN GPL 168 7654 and other consideration, is fair, reasonable, and adequate under the circumstances. This Court has determined that the interests of the Plaintiff Settlement Class, as a whole, will be better served if the claims against these Defendants are resolved by the Settlement rather than pursued.

This Court has further determined that the National Union policy proceeds available to satisfy plaintiffs' claims constitute a limited fund under the standards and circumstances set forth in *In re Agent Orange Product Liability Litigation,* 100 F.R.D. 718, 726 (E.D.N.Y.1983), *Jenkins v. Raymark Ind.,* 109 F.R.D. 269, 277 (E.D.Tex.1985), and under the rationale of *Bush v. Rewald,* 1968 (CCH) Fed.Sec. L.Reps. ¶ 92,999 (D.Haw.1986), and *In re United Energy Corp., etc., Sec. Lit.,* 1989 (CCH) Fed.Sec.L.Reps. ¶ 94,376, 1989 WL 73211 (C.D.Cal.1989). Under the *Agent Orange* standard, a limited fund is shown by establishing a "substantial probability" that the claims of earlier litigants will exhaust the defendants' assets. This Court has determined that the policy constitutes, in effect, the total assets of these Settling Defendants available to satisfy the claims of the Class because the non-bankruptcy exempt personal assets of these defendants are inadequate in relation to the magnitude of investor claims. While claims of additional insurance coverage have been made, the prospects for success are uncertain and continued litigation threatens to exhaust the coverage available. Moreover, other state actions brought by individuals within the Settlement Class definition against the Granada Defendants constitute additional competition for this limited fund. The claims of the Class (approximately $300 million) demonstrably far exceed the total amount now available under the policy of approximately $8,500,000.

Because of the limited sources of recovery, the continued prosecution of separate actions by Class Members and other claimants will create a real risk, not only of inconsistent or varying adjudications establishing incompatible standards of conduct for defendants, as Rule 23(b)(1)(A) requires, but would also result in the substantial impairment of the ability of various Class Members and other claimants to protect their interests. The adjudication of individual claims would dispose of these interests by disposing of the only available source of recovery thereon; Rule 23(b)(1)(B)'s requirement thus is also satisfied. The Court finds that the circumstances justifying mandatory certification under Federal Rule of Civil Procedure 23(b)(1)(A) and (B) and Federal Rule of Civil Procedure 23(a)(1)–(4) are satisfied, solely for the purposes of allowing the certification of a temporary settlement class.

This Court's February 6, 1992 Order included the certification, for purposes of implementing and enforcing the proposed Settlement Agreement with the Granada Defendants only, of the Settlement Class on a mandatory basis under Federal Rule of Civil Procedure 23(b)(1)(A) and (B) and 23(a)(1)–(4). The certified Settlement Class was defined as follows:

All persons who invested in one or more of the following seven publicly offered partnerships, and suffered losses as a result:

1. Integrated Cattle Systems IV;

2. Integrated Cattle Systems V;

3. Granada 1;

4. Granada 2;

5. Granada 3;

6. Granada 4; and

7. Granada 5.

Notwithstanding any interest in the partnerships which they may have, all defendants, the members of their immediate families, and any entity in which any of them have the controlling interest, and the legal representatives, heirs, successors or assigns of any of them are expressly excluded from membership in the proposed plaintiff class. Also expressly excluded from membership in the Plaintiff Settlement Class for purposes of sharing in any distribution from the settlement with Certain Lawyer Defendants, notwithstanding any interest in the partnership which they may have, are all persons who have released Certain Lawyer Defendants of the Settled Claims prior to the Effective Date.

All Class Members were given an opportunity, pursuant to the Class Notice, to object to this certification. As reflected in the reports filed by class counsel only a small number of written objections to the settlement and no objections to mandatory class certification have been registered.

This Court has further determined that the Settlement embodied in the Settlement Agreement is entered into in good faith and that there is no evidence of collusion, fraud or tortious conduct by any of the parties to the Settlement Agreement aimed at causing injury to the interests of the Non–Settling Defendants (as defined in the Settlement Agreement), any potential defendants or others. Accordingly, based upon these findings, and good cause therefore being shown to this Court's satisfaction:

IT IS HEREBY ORDERED, ADJUDGED AND DECREED, that:

A. The above-defined Settlement Class is hereby certified, on a permanent basis, for purposes of implementing and enforcing the Settlement Agreement, on a mandatory basis as against the Granada Defendants only.

1. The Settlement is hereby approved pursuant to Federal Rule of Civil Procedure 23(e) and confirmed as being fair, adequate and reasonable; the parties thereto are directed to consummate this Settlement in accordance with the terms and conditions set forth in the Settlement Agreement; and the Clerk of the Court is directed to enter this final judgment.

2. This action and the claims asserted therein against the Granada Defendants are hereby dismissed with prejudice, and the Granada Defendants are hereby released and discharged from any and all liability under or based upon the claims alleged by plaintiffs in the *Gummere, Shick, Preston* and *Melcher* actions (as those actions are defined in the Settlement Agreement) and from any and all liability in connection with the assignment of claims against the Non–Settling Defendants (as defined in the Settlement Agreement). This Final Judgment shall be final and conclusive with respect thereto.

3. The plaintiffs and all other members of the Settlement Class (as defined in the Settlement Agreement) whether directly, representatively, derivatively, or in any other capacity, are hereby severally and permanently enjoined and barred from instituting or further prosecuting any action or proceeding in any court or tribunal of this or any other jurisdiction based upon any claim settled by the Settlement Agreement, all of which claims are hereby declared to be released, discharged, compromised, settled and extinguished.

4. Any claim the Granada Defendants may have or have had against any Settlement Class Member arising in connection with the institution and prosecution of this litigation is hereby released and the Granada Defendants are hereby barred and permanently enjoined from prosecuting, against any member of the Settlement Class, any claim, cause of action, or lawsuit which they had or have based upon the institution and prosecution of this litigation.

5. All claims for contribution, indemnification, or reimbursement, however denominated, against the Granada Defendants arising under federal or state law, including those based in tort, contract, or statute, or any other body of law, in favor of persons, including the Non–Settling Defen-

dants, who are asserted to be or who may be joint tortfeasors or wrongdoers, however denominated, with the Granada Defendants, are extinguished, discharged, satisfied, barred, and enjoined, with the exception, however, that should any parts of the case involving the Non–Settling Defendants be tried, the jury will assess the relative culpability of both the settling and Non–Settling Defendants; and the Non–Settling Defendants will pay only a commensurate percentage of the judgment according to their proportionate fault.

6. Judgment entered pursuant hereto shall be deemed final pursuant to Federal Rule of Civil Procedure 54(b).

7. This Court reserves jurisdiction over:

a. Implementation of this Settlement and distribution of the Net Settlement Fund to Settlement Class Members;

b. Hearing and determining application for Plaintiff Settlement Class's attorneys' fees, costs, expenses, including expert fees and costs, and interest;

c. The *Gummere, Shick, Preston* and *Melcher* actions until the judgment contemplated hereby has become effective and each and every act agreed to be performed by the parties hereto shall have been performed pursuant to the Settlement Agreement;

d. Any attempts by any person to assert any claims barred in accordance with this Order;

e. All parties to the Settlement Agreement including all Plaintiff Settlement Class Members for the purpose of enforcing and administering this Settlement Agreement; and

f. Non-settling Defendants in connection with the continuing prosecution of the Reserved Claims (as that term is defined in the Settlement Agreement).

## PERMANENT INJUNCTION

B. In its February 6, 1991 Order, this Court issued a temporary injunction as follows:

In order to protect the limited fund from competing judgments by individual class members, from further reduction for de-

fense costs, and to preserve the *status quo* pending this Court's final settlement approval determination, any and all proceedings in federal or state court which assert the claims of any or all members of the Plaintiff Settlement Class, as defined herein, against any or all of the Granada Defendants are hereby stayed or enjoined, until further order of this Court, pursuant to 28 U.S.C. § 1651 and Federal Rule of Civil Procedure 23(b)(1).

1. The court-approved *Notice of Class Certification and Proposed Settlements,* mailed to all known class members, notified them of this injunction and described the procedure to object or otherwise be heard with respect to its continuation.

2. The Court has read the pleadings and papers, and considered the arguments advanced, in connection with the Plaintiff Settlement Class' request for a permanent injunction on the above referenced proceedings. This Court is satisfied that it possesses the authority and discretion to grant such an injunction under 28 U.S.C. §§ 1651, 2283, and 2361, and as supported by the following authorities: *In re Baldwin–United Corp.,* 770 F.2d 328 (2d Cir.1985); *James v. Bellotti,* 733 F.2d 989 (1st Cir. 1984); *In re Corrugated Container Antitrust Litigation,* 659 F.2d 1332 (5th Cir. 1981); and *Bush v. Rewald* [1986 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 92,999 (D.Hawaii 1986). Accordingly, it is hereby

ORDERED that the commencement, continuance and/or prosecution of any and all proceedings in federal or state court which assert the claims of any or all members of the Plaintiff Settlement Class, as defined in the Settlement Agreement (Granada Defendants), against any or all of the Granada Defendants is hereby permanently barred and enjoined with respect to claims against any or all of the Granada Defendants.

## ORDER

Plaintiffs having moved for the award of counsel fees and the reimbursement of expenses incurred in the prosecution of the actions out of the settlement fund established as a result of the partial settlements

approved herein, and the Court having reviewed the fee and expense application and the papers submitted in support thereof, upon due deliberation it is

ORDERED that counsel fees in the amount of thirty percent (30%) of the amount remaining in the settlement fund after payment to the plaintiffs in the *Weller* and *Melcher* actions together with a proportionate share of any interest earned on the settlement fund to the date of payment be paid to counsel for the class action plaintiffs out of the settlement fund and that counsel for the class action plaintiffs be reimbursed for their necessary disbursements in the amount of $394,985.48 out of the settlement fund, and it is further

ORDERED that such sums be made payable jointly to Goodkind Labaton Rudoff & Sucharow, New York, NY, and Lieff, Cabraser & Heimann, San Francisco, Cal., for distribution to the class action counsel.

### ORDER

The class action plaintiffs having moved for the award of incentive payments in the amount of $5,000 to each of the representative class action plaintiffs out of the settlement fund established in connection with the partial settlements, and the Court having reviewed the papers submitted in support of such awards, upon due deliberation, it is

ORDERED that incentive payments be made to each of the representative class action plaintiffs in the amount of $5,000 out of the settlement fund established herein.