STEWARD v. TRAVERSE CITY STATE BANK.

1. ACCOUNTING—FIDUCIARY RELATIONS—NEGLIGENCE.

Where complainant and another conducted lumbering opera-
tions under the supervision of the latter, who permitted
the parties with whom he dealt to present accounts and
charges that he paid without examination, and the busi-
ness, being placed in the hands of a trustee, was continued
in a correspondingly loose manner, on an accounting be-
tween the persons in interest, the trustee was chargeable
with losses sustained by reason of such negligence.

2. SAME—TRUSTS—NEGLECT.

In examining the accounts of the trustee the court will not
attempt to save him from the consequences of his want of
care in keeping sufficient books, etc., and from the in-
accuracies of his agent in keeping accounts of disburse-
ments.

Appeal from Grand Traverse; Mayne, J. Submit-
ted April 20, 1915. (Docket No. 79.) Decided July
23, 1915.

Bill by George W. Steward against the Traverse City
State Bank and others for an accounting. From the
decree rendered complainant appeals. Modified and
affirmed.

*Covell & Cross,* for complainant.
*Parm C. Gilbert,* for defendants.

OSTRANDER, J. A considerable history of the cause
will be found in the opinion published in 168 Mich.
258 (134 N. W. 196). Pertinent portions of the opin-
ion, showing the reasons for reversing the decree and
requiring a new accounting, are the following:

"The business was carried on, under the arrange-
ment, from October until March. Of this fact there

can be no doubt. It was thereafter continued, without any protest or demand on the part of complainant. Mr. Hannah had as much and the same authority to continue the business after March, 1905, as before that time. That complainant had little, if anything, to do with the business after March, 1905, is not a fact of any importance. That Mr. Hannah declined to proceed with the business, if it was to be managed by complainant, or if he was to be employed at wages, is a fact easily accounted for. The understanding from the beginning was that Payn, and not complainant, should be manager, and to this complainant assented. The bill of complaint was filed long afterwards. It is framed according to the theory that complainant is entitled to an accounting and to have the fair and reasonable profits arising from the business applied in reduction of his debt. It is not intimated therein that authority to carry on the business had not been given. Complainant took the chances of a profit to be produced by Payn's management, to which he expressly agreed, and Hannah's capital, which he knew was being used. He never protested, never demanded, and never was refused, information. I am of the opinion that in so far as the account is stated according to the theory that any of the defendants should be charged, on March 20, 1905, or on any other day, with appropriating any of the property, or with dealing with it without authority, it is wrongly stated.

"It does not follow, however, that Mr. Hannah had the right to exercise no care, or indifferent care, with respect to the enterprise. The agreement that Payn should manage the business did not relieve Mr. Hannah from all responsibility. His advances of cash and of merchandise were items of the cost of running the business, to be repaid before a profit would be shown. He was under some obligation to see to it that disbursements were properly made; that accounts were properly kept. It appears that he gave the matter little or no attention, but advanced cash and merchandise, upon the demand of Payn, without supervision and with little inquiry. Probably no one may be truthfully charged with dishonesty. Yet it is clear that Payn permitted Harrington, who boarded some of his men, to be constantly and increasingly overpaid, when the

exercise of ordinary business sense would have prevented such a result. Complainant should not be charged with such a loss. As to the amount of the indebtedness of certain contractors who were overpaid, the conclusion, upon this record, cannot be so certain. Their accounts were not closed when Hannah took over the property, and it seems that then they had been, to some extent, overpaid. But the testimony tends strongly to show that ordinary business prudence would have prevented further considerable overpayments. Taking over this business, as Mr. Hannah did, at the stage to which it had then been brought, continuing it after the manner in which it had theretofore been conducted, without changing or revoking contracts already made by complainant, Mr. Hannah did not insure the success of the business or agree that it should show a profit. In so far as losses can be traced to his failure, or to the failure of his representatives, to exercise ordinary care and prudence in conducting the business as it was conducted, they should be borne by defendants. It is impracticable for this court to state an account in accordance with the indicated rule."

Upon a further hearing in the court below, a hearing which was pursued with deliberation and care, the court made and stated an account and entered a decree which required the surrender and cancellation of the complainant's $6,000 note and the reconveyance to him of certain undisposed of property upon his paying to defendants the sum of $727.12, with interest from December 31, 1906. It is urged for the complainant that in the conclusions arrived at the court, in considering the losses attributable to the failure of Hannah, the trustee, to exercise ordinary care in the management of the trust estate, failed to observe the directions of this court and failed to charge to Hannah and the defendants various sums which ordinary care would have saved to the estate.

It is apparent at the outset that, lacking the details, the books, and memoranda which were before the trial

court, we are limited upon this appeal to an examination of such evidences of mistake in the theory of making up the account and to such evidences of the improper allowance or disallowance of items as counsel are able to point out and sustain by the record.

The business which by mutual agreement was carried on after the trustee assumed control of the property consisted of lumbering operations. The business was in the immediate charge of one Payn. Money was advanced to Payn by the trustee, and merchandise was furnished upon Payn's orders. The total of advancements so made exceeded $12,000. The mill at which lumber and shingles were manufactured belonged to a third party, who manufactured the shingles for 50 cents a thousand, and sawed the lumber for $3 a thousand board measure. Another person was employed by Payn to put in logs. According to defendants' account, the amount received from the sales of lumber and shingles was about $10,000; the net loss some $3,000. It appears that Payn overpaid Harrington, a store and boarding-house keeper, overpaid the mill-owner, overpaid the man who undertook to put in logs, and that does not account for all money which he handled. We do not find serious dispute about the amount of advancements made by Mr. Hannah, or on his account, or about what he and his representatives after his death received from the property. The serious question is presented by evidence that Payn was permitted, without proper checking and examination of his pay rolls and other demands, to pay out money and secure merchandise which defendants charge to complainant's account, for which complainant and the business received no benefit. He is charged by counsel with dishonesty in the use of money he received, which it is claimed ordinary care on the part of the trustee would have discovered. The defendants contend, and the contention is supported by testimony, that, after

the trustee controlled the property, the business was conducted as it had theretofore been by the complainant himself; that portions of what now appear to have been overpayments made by Payn existed then; and that complainant was or should have been cognizant of the manner of conducting the business and of the methods employed by Payn. These matters were all of them considered in the court below; and after a careful examination of the record, with the aid of the briefs, we are impressed that in one respect only can we, upon the evidence produced, disagree with the conclusions evidenced by the decree. However much confidence the trustee, and the complainant as well, may have had in the integrity and the business ability of Mr. Payn, common business prudence required an examination of his demands for money and for merchandise which they did not have. Payn's method of keeping account of his transactions, and the accuracy of his accounts, ought to have been investigated. And the duty to make the investigation rested upon the trustee, and not upon the complainant, after the trustee assumed control, and especially after complainant was excluded from participation in the business. Complainant's general knowledge of the method of conducting the business will not be presumed, in the absence of qualifying testimony, to have included knowledge of Payn's dishonesty, if he was dishonest.

It has been stated that one Harrington was a store and boarding house keeper. Men employed by Payn in the business boarded with Harrington. Their board bill was, or should have been, deducted from their pay roll accounts. Men employed by Payn traded at Harrington's store. The amounts of their various accounts for merchandise were, or should have been, deducted from their pay roll accounts. The most of the merchandise furnished by Hannah and charged to com-

plainant was shipped to Harrington, who at the end of each month furnished to Payn a statement of the board bills and store accounts of the men and was given credit for these amounts. At the end of each month Payn presented to Hannah a pay roll for all men employed by him, including his own time and board bill, making no deductions for the board bills and store accounts for which Harrington had received credit. Payn received from Mr. Hannah the sum of his pay roll as he presented it.

We are impressed that ordinary care would have discovered this condition. It is not easy to discover the exact amount which proper supervision in this respect would have saved to complainant. But, when the fact that the trustee was derelict in duty is established, the court will not be too nice in saving him from the consequences of his negligence. This is especially so when discovery of the exact amount chargeable to him depends upon the examination of inaccurately kept accounts of his agent's disbursements. We are inclined to accept, in this respect, the computations made by complainant's counsel. We are impressed that the testimony sustains the conclusion that Payn received from Hannah $2,309.09 for men's wages which he never paid out for that or any other purpose, and that he overpaid Harrington $1,363.80. These two items amount to $3,672.89. The court below found defendants liable for overpayments to Payn in the sum of $749.27.

We do not find reason for disturbing the decree in other respects. The difference between the sum which should have been charged to defendants and the sum so charged by the court below is $2,923.62, requiring the decree to be amended so as to provide that defendants shall pay to complainant the sum of $2,196.50 instead of receiving from him $727.12. In other re-

spects the decree is affirmed. Complainant will recover the costs of this appeal.

BROOKE, C. J., and KUHN, STONE, BIRD, MOORE, and STEERE, JJ., concurred.

The late Justice MCALVAY took no part in this decision.