## In re SQUARE REAL ESTATE, INC., Debtor.

**Douglas L. LEITCH, Trustee, Plaintiff,**

**v.**

**MARJORIE M. JELSEMA TEN YEAR IRREVOCABLE TRUST DATED JANUARY 2, 1982 and Currently Trusteed by Jack Jelsema, Defendant.**

**Douglas L. LEITCH, Trustee, Plaintiff,**

**v.**

**The MELVIN M. JELSEMA IRREVOCABLE CHARITABLE RELIGIOUS TRUST, DATED SEPTEMBER 14, 1976 and Currently Trusteed by Roy Call and Jack Jelsema, Defendant.**

Bankruptcy No. HG 90–80909.
Adv. Nos. 92–8442, 92–8443.

United States Bankruptcy Court,
W.D. Michigan.

Jan. 10, 1994.

---

McShane & Bowie by Michael W. Donovan and Denise D. Twinney, Grand Rapids, MI, for plaintiff.

Miller, Johnson, Snell & Cummiskey by Thomas P. Sarb, Grand Rapids, MI,. for defendants.

## OPINION

LAURENCE E. HOWARD, Chief Judge.

### DOES THE ONE YEAR PREFERENCE PERIOD FOR A NON–INSIDER TRANSFEREE, WHEN THE BENEFIT RUNS TO AN INSIDER CREDITOR, APPLY TO THESE FACTS?

*Facts.*

The underlying facts are not disputed. On December 14, 1976 the "Melvin M. Jelsema Irrevocable Charitable Religious Trust" (Religious Trust) was established with Robert Steed (Steed) as one of its Trustees. At all relevant times, he was President of Debtor, Square Real Estate, Inc. The "Marjorie M. Jelsema Ten Year Irrevocable Trust Agreement" (Ten Year Trust) was entered into on January 2, 1982, and it also named Steed as one of its Trustees. Carl H. Smith (Smith) was a Co–Trustee on both of the trusts and worked at Square Real Estate Company.

On August 22, 1986 both Trusts entered into an "Agreement" with Square Real Estate, Inc. (Square) in which Square agreed to pay interest of 11.4% per annum for the funds it received. Steed signed the agreements on behalf of Square and Smith signed the agreements on behalf of the Trusts. The funds, $100,000 from the Religious Trust and $115,000 from the Ten Year Trust, could be used pursuant to the .Agreement in the Square investment group which consisted of various investment ventures. At the discretion of Square the investments could be transferred. The Trusts contend that additional monies were also taken from the Trusts for Square's use.

In September of 1988 Steed was removed as Trustee of the Religious Trust and on October 1, 1988 Steed consented to his removal as Trustee for the Ten Year Trust. A demand was made upon Square for repayment of the principal and accrued interest to both Trusts, and Square paid to the Religious Trust $180,845.39 on June 26, 1989 and to the Ten Year Trust $243,628.09 on September 29, 1989. Square filed a chapter 11 on March 2, 1990 and voluntarily converted

to chapter 7 on September 7, 1990. In the Probate Court for Kent County, the Honorable Edward Skinner ordered on April 30, 1991 that, pursuant to a "Consent to Surcharge Judgment," Steed and Co–Trustee Smith pay $30,000 each to the Trusts.

*Procedural History.*

The Plaintiff, the chapter 7 Trustee, filed complaints against the Trusts in an attempt to recover preferences from the Trusts as non-insider transferees in the extended one year preference period for insider creditors. The Plaintiff asserts that the payments made to the Trusts within one year of Square's bankruptcy were preferences because Steed, an insider, was a creditor of Square for his contingent liability to the Trusts. The Defendants argue that the payments made were not preferences because only the 90 day preference period applies since insider Steed was not a creditor of Square for the debt to the Trusts. These adversary proceedings, which were consolidated in the pretrial orders, have come before the court on cross motions for summary judgment.

The Defendants submitted in support of their original brief accompanying their motion an affidavit of Jack Jelsema (successor Trustee of the Trusts); a copy of each Trust; a copy of a December 6, 1988, letter from Jack Jelsema and Donald Faber as Trustees of the Trusts to Steed as President of Square which called for repayment; and a copy of the Consent to Surcharge Judgment and Order entered by Kent County Probate Judge Edward Skinner. Square's original brief in support of their motion contained a copy of the "Agreement" between Square and each of the Trusts; Plaintiff's Answers to Defendants' Joint Interrogatories; each Defendant's Answers to Plaintiff's Interrogatories; an August 18, 1989, letter from Robert Brower of Miller, Johnson, Snell & Cummiskey to Thomas Schouten of Dunn, Schouten & Snoap and to William Azkoul, Sr. of Azkoul & Azkoul regarding settlement between Smith,

Steed and the Trusts; the December 6, 1988, letter to Steed from the Trustees; the Kent County Probate Court's Order of Surcharge; and an Affidavit of Robert Molenbeek (accountant for the Debtor). The Plaintiff's Supplemental Brief did not refer to additional evidence, but the Defendants' Supplemental Brief had an Affidavit of Marjorie Jelsema (a Settlor of the Trusts).

*Law.*

■ 11 U.S.C. § 547(b) provides:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

    (1) to or for the benefit of a creditor;

    (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

    (3) made while the debtor was insolvent;

    (4) made—

        (A) on or within 90 days before the date of the filing of the petition; or

        (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

    (5) that enables such creditor to receive more than such creditor would receive if—

        (A) the case were a case under chapter 7 of this title;

        (B) the transfer had not been made; and

        (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

Various courts [1] have looked at 11 U.S.C. § 547(b) in conjunction with 11 U.S.C. § 550(a)(1) which allows a trustee to recover from the initial transferee or the entity for whose benefit the transfer was made.

The Sixth Circuit held in *Ray v. City Bank and Trust Co. (In re C–L Cartage Co., Inc.),*

---

1. The circuit court cases include: *Travelers Ins. Co. v. Cambridge Meridian Group, Inc. (In re Erin Food Serv., Inc.),* 980 F.2d 792 (1st Cir.1992); *Southmark Corp. v. Southmark Personal Storage, Inc. (In re Southmark Corp.),* 993 F.2d 117 (5th Cir.1993); *Ray v. City Bank and Trust Co. (In re C–L Cartage Co., Inc.),* 899 F.2d 1490 (6th Cir. 1990); *Levit v. Ingersoll Rand Fin. Corp.,* 874 F.2d 1186 (7th Cir.1989); *Official Unsecured Creditors Committee of Suffola, Inc. v. U.S. Nat'l Bank of Oregon (In re Suffola, Inc.),* 2 F.3d 977 (9th Cir.1993); and *Mfr. Hanover Leasing Corp. v. Lowrey (In re Robinson Bros. Drilling, Inc.),* 892 F.2d 850 (10th Cir.1989).

899 F.2d 1490 (6th Cir.1990) that 11 U.S.C. § 550(a)(1), read together with sections 547(b)(1) and (b)(4)(B), allows a trustee in bankruptcy to recover avoidable payments from non-insiders made during the extended preference period when those payments benefited insider creditors or guarantors. The facts of that case differ from this case in that the insider actually obtained the loan personally and turned the money over to the corporate debtor for its use and to make payments on the loan. The circuit court concluded that the insider was either a creditor or guarantor of the debtor. The Sixth Circuit was relying on *Levit v. Ingersoll Rand Fin. Corp. (In re V.N. Deprizio Constr. Co.)*, 874 F.2d 1186 (7th Cir.1989), the most renowned case on this subject. The Sixth Circuit's intent to follow *Deprizio* was reaffirmed in *Harrison v. Brent Towing Co., Inc. (In re H & S Transp. Co., Inc.)*, 939 F.2d 355 (6th Cir. 1991), a case in which there was no insider creditor.

The *Deprizio* court began by closely examining the terms used in 547(b), including "creditor" which is defined in 11 U.S.C. § 101(10)(A) as "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." "Claim" is defined in 11 U.S.C. § 101(5)(A) as "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."

*Deprizio* then dealt with three types of alleged preferences to non-insiders made for the benefit of insider creditors. The first were the debtor's payments to lenders which debt insiders had guaranteed. Since a guarantor maintains a contingent right to payment from the debtor, the court held that the guarantor qualifies as a creditor under 11 U.S.C. § 101(10)(A). Because any reduction of the debtor's debt to the lender reduced the guarantor's liability, the guarantor received a benefit. After disarming the creditors of any arguments based on equity or policy the court held that "[t]he preference-recovery period for outside creditors is one year when the payment produces a benefit for an inside creditor, including a guarantor." *Id.* 874 F.2d 1186 at 1200–1201.

The second attempted preference recovery was from the I.R.S. for payments made to the I.R.S. during the extended one year preference period based on the theory that since the insider's 100% penalty was reduced as a result of the debtor's payments, the extended period applied. The Seventh Circuit held:

> Because an "insider" may be liable under § 6672(a) when the firm does not pay over taxes, every dollar of tax paid reduces the insider's exposure. Thus the insider receives a benefit from payment. Section 547(b)(1) speaks, however, of payments for the benefit of creditors, not benefits at large. A person is a "creditor" only to the extent he holds a "claim" against the debtor. So all turns on whether a "person required to collect, truthfully account for, and pay over any tax"—in the shorthand of tax law, a "responsible person"—has a contingent right to recover from the debtor in bankruptcy, the only basis for calling him a "creditor".

*Id.* at 1191. The court held that the tax code does not authorize the "responsible person" to recover from the corporation. The plaintiff argued that at common law the responsible person had rights of contribution or indemnification from the employer. The court responded that, "Section 6672(a) does not define a tort, however, and federal courts no longer create private rights of action without support in either the statutory text or the legislative history." *Id.* at 1191. The court continued that an analogy to common law indemnity did not advance the plaintiff's position because " "[T]here can be no indemnity in favor of the intentional or reckless tortfeasor", W. Page Keeton, et al., *Prosser and Keeton on Torts* 343 (5th ed. 1984)", and "[a]nyone who must pay a penalty under § 6672(a) also has the degree of involvement and the mental state that would prevent indemnity at common law." *Id.* at 1192. Therefore, the preference period for collection for payments made to the I.R.S. for taxes where there was an insider who would have a 100% penalty for those taxes was only 90 days because the insider had independent liability for the taxes and was not a creditor of the debtor regarding the taxes.

The third type of preferences attempted to be recovered in *Deprizio* were from pension and welfare funds. Where insiders gave personal notes guaranteeing payment, the court referred to the reasoning as in the first group of preferences and held that the one year preference period applied. However, the plaintiff's position was that the one year preference period applied to all payments made to the funds because insiders of the debtor would have been liable for contributions. The court explained that unless the terms of a welfare or pension plan committed an insider to pay, that being a contractual commitment, there was no benefit to an inside creditor. An insider's state law liability for making plan payments arising from piercing the corporate veil was discussed, but the court pointed out that the insider would not have a claim against the corporation since piercing the veil means that in actuality the individual and the corporation are the same entity. Judge Richard S. Stair, summarized the seventh circuit's discussion:

> *Levit* holds that in those cases where an insider is liable to a third party upon the debtor's failure to pay, the insider has a "claim" against the debtor and is thus a "creditor" under the Bankruptcy Code for purposes of § 547(b)(1), under the following circumstances: (1) where state or federal law provides the insider a right to recover from the debtor; (2) where the insider, as the result of a contractual commitment to satisfy the debtor's obligation, has a claim over against the debtor.

*Hendon v. Associates Commercial Corp. (In re Fastrans, Inc.)*, 142 B.R. 241 (Bankr. E.D.Tenn.1992).

Steed never guaranteed Square's debt to the Trusts. The only real issue before this court is whether Steed, an insider, was a creditor of the Debtor. Could Steed have been required to pay the debt to the Trusts, and would he have been able to recover from Square? As *Fastrans* stated, that right of recovery could arise either from state or federal law or contractually.

Originally the Plaintiff seemed to have taken the position that Steed had breached his fiduciary duty to the Trusts. That would have given the Trusts a basis for a claim against Steed. Both of the complaints state, "The Debtor's payment to the Trust benefited Steed by extinguishing his liability to the Trust for alleged violations of his fiduciary duties to the Trust and its beneficiaries." Adversary Proceeding 92–8442, Complaint ¶ 18; Adversary Proceeding 92–8443, Complaint ¶ 19. Plaintiff's Memorandum in Support of Cross Motion for Summary Judgment asserted, "If Square had not paid the Trusts the amounts due and owing pursuant to the agreements between Square and the Trusts, the subsequent judgment against Robert Steed for breach of his fiduciary duties as Co–Trustee would have necessarily included these amounts as they were investments in an entity owned or controlled by Robert Steed." Memorandum, p. 7.

▪ Michigan law imposes high standards of conduct upon trustees.

> Except as otherwise provided by the terms of the trust, the trustee shall observe the standards in dealing with the trust assets that would be observed by a prudent man dealing with the property of another, and if the trustee has special skills or is named trustee on the basis of representations or special skills or expertise, he is under the duty to use those skills.

M.S.A. § 27.5813 [M.C.L.A. § 700.813]. Michigan law also regulates the trustee's investment of funds.

> Trust funds or property received by any person or corporation acting in a trust or fiduciary capacity and available for investment shall be invested at the time and in the manner specified in and by the agreement, instrument, or order creating or defining the trust or other holding.... Trust funds or property shall not be invested in any securities or property purchased from the trustee, whether a person or corporation, or, if the trustee is a corporation, from any subsidiary or affiliate of the corporation.

M.S.A. § 26.85(1) [M.C.L.A. § 555.201(1)].

The Trust documents themselves regulate the Trustee's authority to use the Trust Funds. The Religious Trust states in Section XI, ¶ A, "No principal or income, howev-

er, shall be loaned directly or indirectly, to any Trustee or anyone else, corporate or otherwise, who has at any time made a contribution to this trust, nor to anyone except on the basis of an adequate interest charge and with adequate security." The Ten Year Trust regulates the powers of the Trustee in Article 5.1.

> In the administration of this Trust, the Trustee shall have the following powers, in addition to and not in limitation of the Trustee's common law powers and statutory powers, specifically including those powers included in Michigan Act 642 of 1978, as amended, or any corresponding or similar statute provided (1) that such common law and statutory powers shall only be exercised to the extent that they are not in conflict with the provisions of this Article and (2) that such common law and statutory powers shall be exercised in a fiduciary capacity in accordance with the general standards of trust administration imposed upon Trustees.

The Defendants submitted two Affidavits in support of the contention that Steed was not given the authority by the Trusts to invest in Square. In the March 18, 1993, Affidavit of Jack Jelsema (Successor Trustee), ¶ 9, he states:

> 9. Robert Steed did not, as Trustee, have authority to make the loans, advancements or distributions from the Trusts to Square. The Trusts' loans, advancements and distributions to Square while Robert Steed was a Trustee violated the Trusts' terms, were made without authority, and were beyond Robert Steed's powers as Trustee. These transactions also violated the self-dealing restrictions under Federal tax laws.

The May 10, 1993, Affidavit of Marjorie M. Jelsema (Settlor), ¶¶ 8–15, declares:

> 8. The Ten Year Trust specifically required that Trustees act in a fiduciary capacity in accordance with general standards of trust administration, which standards prohibit self-dealing.
>
> 9. The Religious Trust specifically prohibited self-dealing, interest-free loans, unsecured loans, and any transactions not

in furtherance of the Religious Trust's charitable purposes.

> 10. Neither Trust authorized Robert Steed to make investments in businesses he owned, controlled or operated or to make investments on an unsecured or interest-free basis.
>
> 11. The beneficiaries of the Ten Year Trust were Diana Jelsema, Joanne Jelsema, Judy Jelsema, Jason Jelsema, Joel Jelsema, Jack V. Jelsema and Daniel Jelsema. These beneficiaries did not authorize, and did not have the power to authorize, Robert Steed, as Trustee of the Ten Year Trust, to violate state and federal law.
>
> 12. I was not a beneficiary of the Ten Year Trust during its ten year term.
>
> 13. I did not authorize, and did not have the power to authorize, Robert Steed as Trustee of the Ten Year Trust to violate federal law, state law and the Trust's terms prohibiting self-dealing.
>
> 14. The beneficiaries of the Religious Trust were eligible non-profit tax-exempt religious corporations which met the doctrinal guidelines included in the Religious Trust. These beneficiaries did not authorize, and did not have the power to authorize, Robert Steed, as Trustee of the Religious Trust, to violate federal law, state law, and the Trust's terms prohibiting self-dealing.
>
> 15. I was not a beneficiary of the Religious Trust. I did not authorize, and did not have the power to authorize, Robert Steed as Trustee of the Religious Trust to violate federal law, state law, and the Trust's terms prohibiting self-dealing.

■ Considering state law, the terms of the Trust documents and the two Affidavits, it seems that Steed may have breached his duties as a Trustee. In Michigan, a trustee is personally liable for trust losses if they are caused by the trustee's breach of trust. *Steward v. Traverse City State Bank,* 187 Mich. 387, 153 N.W. 793 (1915).

The quandary caused by the position that Steed breached his fiduciary duty is that if Steed was liable to the Trusts because of his breach of fiduciary duty, his liability would

be personal and apart from the debt owed by Square to the Trusts. It would not be logical to suggest that Steed would hold a claim against Square for his own breach of fiduciary duty as a Trustee. Square was not a Trustee of the Trusts, and Steed was not acting in a representative capacity for Square when he became a Trustee. Any malfeasance would have been on the part of Steed in his fiduciary capacity to the Trusts.

However, even if there were some connection between Steed's liability and Square, Michigan law would not permit Steed as the party that breached its fiduciary duty to have a claim for indemnity against Square. In *Allard v. Benjamin (In re DeLorean Motor Co.)*, 65 B.R. 767 (Bankr. E.D.Mich.1986) the court reviewed Michigan indemnity law. It explained that the right to indemnity can arise from common law, implied contract or express contract. There has been no evidence to suggest that Steed had an express contract with Square for indemnification.

As for common law indemnity, *DeLorean* explained:

"Common law indemnity is based on the equitable principle that where the wrongful acts of one results in another being held liable, that latter is entitled to restitution from the wrongdoer." *Hill v. Sullivan Equipment Co.*, 86 Mich.App. 693, 696, 273 N.W.2d 527 (1978); *Accord Skinner [v. D–M–E Corp.]*, *supra* [124 Mich.App. 580, 335 N.W.2d 90], "A right to indemnity may be enforced only when the liability arises vicariously or by operation of law from the wrongful acts of the party from whom indemnity is sought." *Langley [v. Harris Corp.]*, 413 Mich. [592 at] 601, 321 N.W.2d [662] at 667; *Accord Skinner*, 124 Mich. App. at 584, 335 N.W.2d at 92. "A party seeking common law indemnification must show freedom from personal fault, that is, freedom from active or causal of [sic] negligence." *Hartman v. Century Truss Co.*, 132 Mich.App. 661, 347 N.W.2d 777, 778 (1984); *Piper Aircraft Corp. v. Dumon*, 421 Mich. 445, 364 N.W.2d 647, 654 (1984); *(citations omitted).*

*DeLorean* at 769. Steed is not entitled to indemnity based on common law for breach of fiduciary duty because as explained above, he cannot seek indemnity for his own wrongdoing. *DeLorean* looked at implied contractual indemnification in Michigan and concluded that only a party which is free of active negligence is eligible to claim implied contractual indemnification. *Id.* at 772. If Steed breached his fiduciary duty, he is not free of active negligence and cannot advance a right to implied contractual indemnification. Steed does not have a right to indemnification based on either common law, implied contract, or express contract.

If Steed did breach his fiduciary duty to the Trusts, this factual situation would resemble the problem in *Deprizio* where the Plaintiff attempted to recover from the I.R.S. The Seventh Circuit illustrated that even though reduction of the debt to the I.R.S. may have reduced an insider's exposure through the 100% penalty, and thus the insider received a benefit when the debtor made payments to the I.R.S., the insider did not receive a benefit as a creditor. The insider did not have the right to make a claim against the debtor for any of the penalty it might have paid, and therefore the insider was not a creditor of the debtor. Any liability Steed would have resulting from his breach of fiduciary duty to the Trusts is personal liability. He would have no claim against Square for the liability. Hence, Steed would be an insider but not a creditor of the debtor.

In the Plaintiff's Supplemental Memorandum the Plaintiff appears to have changed his position. The Plaintiff's new position asserts that any claim of self-dealing or conflict of interest was waived because Steed was selected as a Trustee for the purpose of investing in Square and therefore Steed acted in the manner the Trusts desired. The Plaintiff also posits that Steed did not commit any bad acts in regard to obtaining the funds or investing them.

Ignoring the reversal of the Plaintiff's position and looking closely at the argument exposes the fact that if Steed did not breach a fiduciary duty, there would be no reason whatsoever for Steed to pay anything to the Trusts. The Plaintiff suggests that because

Square's good reputation was necessary for Square's continued investor backing, any payments Steed would have made to investors would have been repaid by Square. In support of this proposition, the Plaintiff filed the Affidavit of the accountant of Square who stated that Square would have paid Steed back for any debts Steed paid for the company.

From there, the Plaintiff references the expansive definition of a claim under 11 U.S.C. § 101(5), which includes rights to payment which are unliquidated, contingent, unmatured or equitable, and proposes that Steed would have a claim, even though it is remote, under this definition. Hence, Steed would be a creditor of Square.

Looking back to *Deprizio*, this is similar to that plaintiff's attempted recoveries from the welfare or pension funds. The Seventh Circuit made it clear that the insider's liability must have arisen either contractually or statutorily, and no such source of liability existed for those insiders. Here, if Steed did not breach his fiduciary duty, the Plaintiff has not shown any other contractual or statutory source of Steed's liability to the Trusts. Just because the Plaintiff postulates that Steed would have paid Square debts to keep investors happy and the accountant for Square signed an Affidavit saying that Square would have repaid Steed does not mean Steed is entitled to be a creditor of the Debtor. Even taking into account the fact that under the Bankruptcy Code "creditor" and "claim" are defined broadly[2] does not bootstrap Steed into the position of creditor.

*Conclusion.*

Whether or not Steed breached his fiduciary duty is inconsequential to the outcome of these cross motions for summary judgment. If Steed did breach his fiduciary duty, he is not a creditor of the Debtor because his liability is personal and is not the same liability Square had to the Trusts. If Steed did not breach his fiduciary duty, he would have no liability to the Trusts and therefore would not be a creditor of the Debtor. The preference recovery period in these adversary proceedings is 90 days. Since the transfers were prior to 90 days before the filing, summary judgment is granted in favor of the Defendants and the adversary proceedings are dismissed.

---

**2.** *See Ray v. City Bank and Trust Co. (In re C–L Cartage Co., Inc.),* 899 F.2d 1490, 1492 (6th Cir. 1990).