LIEBERMAN *v.* SOLOMON

1. APPEAL AND ERROR—QUESTIONS REVIEWABLE.

The Court of Appeals is not obliged to consider questions not raised in the trial court.

2. INDEMNITY—CORPORATIONS—LEASE.

An indemnitor remained liable on an agreement to indemnify a fellow incorporator for all sums paid by reason of the fellow incorporator's personal guarantee under a lease where the indemnitee, although not compelled by judgment to pay the corporation's obligation under the lease, advanced funds to the corporation to avoid the corporation's default under the lease and the indemnitor agreed to that procedure.

3. INDEMNITY—DAMAGES—JUDGMENT.

A person who is legally liable for damages and entitled to indemnity may settle the claim and recover over against the indemnitor, even though he has not been compelled by judg-

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 545.
[2] 41 Am Jur 2d, Indemnity § 13 *et seq.*
[3] 41 Am Jur 2d, Indemnity § 33.
[4] 41 Am Jur 2d, Indemnity §§ 1, 28, 30.

ment to pay the loss, since a person confronted with an obligation that he cannot legally resist is not obliged to wait to be sued and to lose a reasonable opportunity for compromise.

4. Indemnity—Actual Loss.

An indemnitee, who advanced funds to a corporation to avoid the corporation's default under a lease and accepted promissory notes for the sums advanced, suffered an actual loss where the notes were worthless, the corporation was defunct, and he had not been paid on any of the promissory obligations.

Appeal from Wayne, Neal Fitzgerald, J. Submitted Division 1 June 4, 1970, at Detroit. (Docket No. 6,905.) Decided June 23, 1970. Rehearing denied August 7, 1970. Leave to appeal denied October 20, 1970. 384 Mich 769.

Complaint by Jack Lieberman and FIC Corporation against Samuel B. Solomon. Counterclaim by defendant Solomon against plaintiff Lieberman for indemnification under an agreement of indemnity. Action tried on the counterclaim, and judgment for Solomon. Lieberman appeals. Affirmed.

*Hyman, Gurwin, Nachman, Friedman & Weingarden (Lawrence Halpern,* of counsel), for Lieberman.

*Howard Schwartz,* for Solomon.

Before: J. H. Gillis, P. J., and Bronson and Borradaile,* JJ.

J. H. Gillis, P. J. The subject matter of this suit is an indemnity agreement executed by the parties in January of 1958. Suit was brought on the agreement by Samuel Solomon, counterplaintiff and indemnitee under the agreement, against Jack Lieber-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

man, counterdefendant and indemnitor. Trial was
to the court, sitting without a jury.

Testimony at trial established that in 1957
Solomon, Lieberman, and another formed the Flor-
ida Investment Corporation (hereafter FIC) for the
purpose of acquiring a leasehold interest in an office
building located in Fort Lauderdale, Florida. In
order to obtain a local department store as tenant,
FIC contracted to purchase a leasehold interest in
a nearby corner lot to provide adequate parking for
the department store's customers. The owner of
the corner lot, Harvey Holding Company, was will-
ing to lease the lot to FIC on condition that Solomon
obligate himself personally to perform the terms of
the lease. Solomon acquiesced and signed an agree-
ment which reads in part:

"This guarantee shall be a continuing guarantee
during the term hereof; and in the event of failure
to pay or to perform the terms of said lease agree-
ment by the said FIC, Inc., the undersigned will pay
and perform the same in accordance with the terms
of said agreement."

At the same time, Solomon obtained from his fellow
incorporators, including Lieberman, an agreement
to indemnify him for all sums paid by reason of his
personal guarantee under the Harvey lease. The
indemnity agreement reads in part:

"Whereas, it is the purpose of this agreement to
indemnify first party [Solomon] for any liability,
loss, expense, including reasonable attorney fees,
that first party may sustain or incur by reason of
the guaranty hereto attached   *   *   *   .
"It is, therefore, agreed as follows: Second party
[Lieberman] agrees to pay to first party 40%   *   *   *
of all liability, loss and expense, including reason-
able attorney fees in defending or prosecuting any
suit, action, or other proceeding, or in obtaining or

attempting to obtain a release from liability incurred by first party by reason of, or in connection with or in respect of the aforesaid guaranty * * * . *Second* * * * *part[y] covenant[s] that [he] will reimburse first party for or pay over to first party within the limitations of the percentage aforesaid all sums of money which first party shall pay or become liable to pay by reason of any of the foregoing* and will make such payment to first party as soon as first party shall become liable therefor, whether or not first party shall have paid out such sums or any part thereof." (Emphasis supplied.)

According to Solomon's undisputed testimony at trial, when the above agreements were executed, FIC was insolvent. Solomon's testimony tended to show that, as rents and other obligations under the Harvey lease fell due, it was agreed between Solomon and Lieberman that Solomon would personally fund FIC under his guarantee and that Lieberman, under the indemnification agreement, would reimburse Solomon for the amounts paid. On direct examination, Solomon testified:

"*Q*. Mr. Solomon, you here this morning testified that you were an officer of the FIC Corporation, is that correct?

"*A*. Yes.

"*Q*. Now, did you testify what Mr. Lieberman's position was?

"*A*. He was the president.

"*Q*. Ok. Now, how did you become aware, or did you become aware when FIC incurred debts and obligations under its contracts?

"*A*. Well, we had a Mr. Chase as the manager of the Sweet Building. * * * And he would notify me that we needed money for this, or the rents, or taxes, and so forth.

"*Q*. And they would be sent to you, sir?

"*A*. Yes.

"*Q.* All right. Now, when these bills came due, what did you do with them?

"*A.* I immediately 'phoned Mr. Lieberman and advised him.

\*          \*          \*

"*Q.* Now, acting, sir, in your capacity as an officer contacting Mr. Lieberman as an officer, did you decide as officers of the corporation what to do with regard to these debts?

"*A.* Yes.

"*Q.* And what was the decision between you?

"*A.* The decision was that we would send them a check.

"*Q.* Send who a check?

"*A.* Send the FIC a check.

"*Q.* And what arrangements were made to get the money? How was that done?

\*          \*          \*

"*A.* Mr. Lieberman would ask me to either send my check, or he would send his check to me for the—to the FIC.

"*Q.* Mr. Solomon, so the court doesn't get upset if we are redundant, there was no money in FIC?

"*A.* That is right.

\*          \*          \*

"*Q.* All right. Now, if you didn't have money what did you do to get the money to pay the bills? How did you go about it?

"*A.* I first called Mr. Lieberman.

"*Q.* I got that already. What did you do next?

"*A.* And Mr. Lieberman said to go ahead and pay it.

"*Q.* Who should pay it?

"*A.* That I should pay it.

"*Q.* In what capacity?

"*A.* Under the guarantee,—"

Further testimony established that as Solomon advanced funds to FIC for payment of rents due

under the Harvey lease, he received corporate promissory notes from FIC for the amounts advanced.

In 1961, FIC was declared insolvent and the properties involved were returned to their respective owners. Shortly thereafter, Solomon demanded of Lieberman that he pay, according to the indemnification agreement, his proportionate share of the sums advanced to FIC by Solomon. This Lieberman refused to do. Solomon then filed the instant counterclaim. From a judgment entered in Solomon's favor, counterdefendant Lieberman appeals.

On appeal, defendant Lieberman presents five issues. We shall discuss only two of defendant's contentions, since those remaining are raised for the first time on appeal. We are not obliged to consider questions neither raised nor passed upon by the trial court. See *Gordon Grossman Building Company* v. *Elliott* (1969), 382 Mich 596, 602, and cases therein cited; *Haggerty* v. *MacGregor* (1968), 9 Mich App 671; *Huhn* v. *Davis* (1969), 18 Mich App 440, 449.

Defendant Lieberman contends that since FIC fully performed its obligations under the Harvey lease, Solomon's personal guarantee never went into effect. As a result, Lieberman suggests that his obligation under the indemnity agreement remained dormant. This position, however, cannot be sustained in light of the trial court's express findings of fact.

In his written opinion, the trial judge found that "in actual point of fact the FIC Company did not make any payments on the rent, but merely acted as a conduit or funnel between Solomon and the landlord, Harvey Holding Company". The trial court also found that Solomon's advances to FIC were made pursuant to his personal guarantee. Since Solomon's testimony, quoted *supra,* amply

supports these findings, we have no right to disturb them here. GCR 1963, 517.1; *McDaniels* v. *Schroeder* (1968), 9 Mich App 444; *Haggerty* v. *MacGregor, supra; Hickey* v. *Kaser* (1969), 20 Mich App 296. Moreover, the record supports the conclusion reached by the trial court that both Solomon and Lieberman recognized FIC had no assets and that it was unable to make payments under the lease on its own account. This situation prompted Solomon to advance funds to FIC in order to avoid FIC's default under the lease. According to Solomon's undisputed testimony, Lieberman agreed to this procedure. Under these circumstances, we agree with the trial court's conclusion that Lieberman remained liable on the indemnity agreement.

That Solomon was not compelled by judgment to pay FIC's obligation under the Harvey lease is of no legal effect.

"[A] person legally liable for damages who is entitled to indemnity may settle the claim and recover over against the indemnitor, *even though he has not been compelled by judgment to pay the loss.* The fact of voluntary payment does not negative the right to indemnity, since a person confronted with an obligation that he cannot legally resist is not obliged to wait to be sued and to lose a reasonable opportunity for compromise." 41 Am Jur 2d, Indemnity, § 33, p 723. (Emphasis supplied.)

The record here reveals that Solomon's liability for rents due under the Harvey lease was clear; no defenses were available. See 42 CJS, Indemnity, § 14(2), p 590. Moreover, by its express terms, the indemnity agreement obligates Lieberman to pay over to Solomon "all sums of money which [Solomon] *shall pay*", in addition to sums which Solomon shall "become liable to pay" by reason of the guarantee. (Emphasis supplied.)

Defendant next contends that since Solomon accepted FIC's promissory notes for the sums advanced, Solomon suffered no actual loss—a prerequisite to recovery on the indemnity agreement. Defendant relies on *Richards* v. *F. C. Matthews & Co.* (1931), 256 Mich 159. In *Richards,* it was held that an indemnitee cannot recover on the agreement in the absence of proof of actual damages:

"It was incumbent upon the plaintiff to give sufficient data, facts, and circumstances from which the jury might find the actual loss, if there was one. The burden of proof to establish the loss was upon plaintiff." 256 Mich at 164.

This case is not *Richards,* however; for it is evident from the record that Solomon proved an actual loss to the satisfaction of the trier. The trial judge found that the notes in question were worthless; that FIC was defunct; and that Solomon had not been paid on any of the promissory obligations. Again, record testimony supports these findings and we cannot disturb them. Unlike the situation in *Richards,* plaintiff here sustained his burden of proof.

Furthermore, that Solomon accepted the notes in question did not constitute payment for the sums advanced in the absence of an understanding that they were taken as such. See *People, for use of P. Koenig Coal Co.,* v. *Davis* (1926), 237 Mich 165, 166, and cases therein cited; *Stadler* v. *Ciprian* (1933), 265 Mich 252, 261, 262; *Furlong* v. *Manufacturers National Bank of Detroit* (1938), 285 Mich 517, 520; *Mundhenk* v. *Liverpool & London & Globe Insurance Co., Ltd.* (1945), 311 Mich 571, 577. The trial judge found that "the testimony did not indicate any such agreement in this instance." Our review of the record leads us to the same conclusion. Accordingly, defendant Lieberman failed to

establish payment as a defense. See *In re Dunne-back's Estate* (1942), 302 Mich 73, 77.

The judgment of the trial court is affirmed, with costs to appellee.

All concurred.