SKINNER v D-M-E CORPORATION

Docket No. 60762. Submitted December 8, 1982, at Detroit.—Decided
    April 5, 1983. Leave to appeal applied for.

    Randy L. Skinner, an employee of American Model & Pattern,
    Inc., was injured when the mold sampler he was operating
    exploded. Randy Skinner and Deborah A. Skinner brought an
    action in Macomb Circuit Court, alleging negligence and breach
    of implied warranty, against D-M-E Corporation, VSI Corpora-
    tion and JTD Engineering, Inc. D-M-E Corporation, a division
    of VSI Corporation, had sold the mold sampler to American
    Model. The mold sampler had been built by a company in
    Japan which was not made a party to this action. D-M-E and
    VSI brought a third-party action for indemnity against Ameri-
    can Model, basing their claim upon both common-law indem-
    nity and implied contractual indemnity arising out of Ameri-
    can Model's acceptance of the mold sampler conditioned upon
    American Model's accepting responsibility to employ proper
    safety procedures and to require the use of safety protection by
    the operator. American Model moved for summary judgment
    on the third-party indemnity action. James C. Daner, J.,
    granted American Model's motion for summary judgment. D-M-
    E and VSI settled with the Skinners in the principal action and
    appeal from the entry of summary judgment in favor of Ameri-
    can Model in their third-party indemnity action. Held:

    1. American Model's motion for summary judgment, while
    denominated otherwise, was based on the failure of D-M-E and
    VSI to state a claim upon which relief may be granted. As
    such, the motion tests the legal sufficiency of the claims in the

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 41 Am Jur 2d, Indemnity § 2.
[3] 41 Am Jur 2d, Indemnity § 19.
[4] 41 Am Jur 2d, Indemnity § 13.
[5] 41 Am Jur 2d, Indemnity § 15.
[6] 41 Am Jur 2d, Indemnity §§ 15, 16, 18.
[7] 41 Am Jur 2d, Indemnity §§ 19-21.
[8] 61A Am Jur 2d, Pleading §§ 71, 226.
[9, 10] 41 Am Jur 2d, Indemnity § 25.

third-party indemnity complaint. Accordingly, American Model was entitled to summary judgment only if the claims in the third-party complaint are so clearly unenforceable as a matter of law that no factual development can possibly justify a right to a recovery.

2. Common-law indemnity is only available where the indemnitee is free from active negligence. Common-law indemnity would thus be unavailable with respect to any recovery in the principal action based upon the negligence theory which was pleaded in the principal action. Common-law indemnity would be available to a seller who is not the manufacturer of a defective product where recovery in the principal action is based on a breach of an implied warranty that the product is free from design and manufacturing defects, since the liability of the seller arises by operation of law without regard to the seller's negligence; however, under such circumstances, the seller must seek indemnity from the manufacturer of the product rather than the purchaser of the product. The trial court properly granted summary judgment in favor of American Model as to the claim for common-law indemnity. As to the negligence theory in the principal action, common-law indemnity is precluded by reason of the fact that the claim is based on an allegation of active negligence on the part of D-M-E and VSI. As to the breach of implied warranty theory in the principal action, the manufacturer rather than American Model is the proper party from which to seek indemnity.

3. The acceptance of the mold sampler by American Model was subject to the conditions set forth in the letter from D-M-E concerning the conditions of sale. American Model's acceptance of the machine gave rise to a contractual obligation to assume responsibility for using safe procedures and for insuring the use of protective clothing by the operator. These contractual obligations provide a basis for a claim of implied contractual indemnity. The trial court, therefore, erred in granting summary judgment with respect to the claim for implied contractual indemnity.

4. D-M-E and VSI are entitled to seek implied contractual indemnity from American Model upon proof that they were in fact liable to the principal plaintiff and that their liability was grounded on the principal plaintiffs' claim of a breach of an implied warranty of merchantability rather than the claim of negligence.

Affirmed in part; reversed in part.

1. INDEMNITY — COMMON LAW — CONTRACTS — IMPLIED CONTRACTS.
   The right to indemnity can arise from three possible sources: the common law, an implied contract, or an express contract.

2. INDEMNITY — COMMON LAW.
   Common-law indemnity is based on the equitable principle that, where the wrongful act of one results in another's being held liable, the latter party is entitled to restitution from the wrongdoer; that right can only be enforced where liability arises vicariously or by operation of law from the acts of the party from whom indemnity is sought.

3. INDEMNITY — IMPLIED CONTRACT.
   An implied contract to indemnify arises only if there is a special relationship between the parties or a course of conduct whereby one party undertakes to perform a certain service and impliedly assures indemnification.

4. INDEMNITY — JUDICIAL CONSTRUCTION.
   Indemnity contracts are construed strictly against the party who drafts them and against the indemnitee; in order for an indemnity contract to be given effect its terms must be unequivocal.

5. INDEMNITY — CONTRACTS — JUDICIAL CONSTRUCTION.
   A contract which purportedly indemnifies one against the consequences of his own negligence is subject to strict construction and will not be so construed unless it clearly appears that indemnification for the indemnitee's own negligence was intended.

6. INDEMNITY — COMMON LAW — ACTIVE NEGLIGENCE.
   Common-law indemnity is not available to a party who is not free from active negligence.

7. INDEMNITY — IMPLIED CONTRACTUAL INDEMNITY — ACTIVE NEGLIGENCE.
   Implied contractual indemnity is not available to a party who is not free from active negligence.

8. JUDGMENTS — SUMMARY JUDGMENT — FAILURE TO STATE CLAIM.
   A motion for summary judgment based on the failure to state a claim upon which relief may be granted challenges only the legal sufficiency of the pleadings; a party is entitled to summary judgment on this basis only if the opposing party's claim is so clearly unenforceable as a matter of law that no factual development can possibly justify a right to recover (GCR 1963, 117.2[1]).

9. INDEMNITY — COMMON LAW — ACTIVE NEGLIGENCE.

> Common-law indemnity is available to the seller of a product where the seller is not the manufacturer of the product and the basis for recovery in the principal action is a breach of an implied warranty that the product is free from defective design or manufacture, since the liability of the seller arises by operation of law without regard to the seller's negligence; the claim for indemnity under such circumstances may only be brought against the manufacturer and may not be brought against a purchaser of the product.

10. INDEMNITY — IMPLIED CONTRACTUAL INDEMNITY — CONDITIONAL SALES.

> A sale of a machine subject to the condition that the purchaser will have the responsibility to employ proper safety procedures and to provide safety protection to the operator creates a contractual obligation which will support a claim for implied contractual indemnity by the seller against the purchaser in an action against the seller for injuries resulting from the use of the machine where the claim in the principal action is not based on the seller's active negligence.

*Vandeveer, Garzia, Tonkin, Kerr & Heaphy, P.C.* (by *Dennis B. Cotter*), for D-M-E Corporation and VSI Corporation.

*Kitch, Suhrheinrich, Smith, Saurbier & Drutchas, P.C.* (by *M. Sean Fosmire*), for American Model & Pattern, Inc.

Before: D. C. RILEY, P.J., and D. F. WALSH and WAHLS, JJ.

D. F. WALSH, J. Third-party plaintiffs, D-M-E Corporation and VSI Corporation (hereinafter collectively designated "D-M-E"), appeal the circuit court's entry of summary judgment in favor of third-party defendant, American Model & Pattern, Inc. (hereinafter "American"). GCR 1963, 117.2(1).[1]

---

[1] While American and the trial court both cited GCR 1963, 117.2(3), it appears that the arguments and analysis more closely reflect grounds associated with GCR 1963, 117.2(1).

D-M-E sold American a mold sampler, a device used to inject hot, molten wax under pressure into various molds. Plaintiff Randy Skinner, an employee of American, was severely injured when, while he was operating the mold sampler, the machine exploded. Plaintiffs filed suit against D-M-E, alleging negligence and breach of implied warranty of merchantability. D-M-E joined American as a third-party defendant, seeking indemnification for any damages D-M-E might be forced to pay plaintiffs in connection with the explosion.[2] After American's successful request for summary judgment in the third-party action, which is the subject matter of this appeal, the principal action between plaintiffs and D-M-E was settled and dismissed.

In granting American's motion for summary judgment, the trial court rejected D-M-E's theories of both common-law indemnity and implied contractual indemnity.

Michigan courts have recognized three possible sources of a right to indemnity: the common law, an implied contract, and an express contract. See *Langley v Harris Corp,* 413 Mich 592, 596-597; 321 NW2d 662 (1982); *Reed v St Clair Rubber Co,* 118 Mich App 1; 324 NW2d 512 (1982). "Common law indemnity is based on the equitable principle that where the wrongful act of one results in another being held liable, the latter party is entitled to restitution from the wrongdoer", *Hill v Sullivan Equipment Co,* 86 Mich App 693, 696; 273 NW2d 527 (1978), *lv den* 406 Mich 880 (1979); "the right can only be enforced where liability arises vicariously or by operation of law from the acts of the

---

[2] There has been no attempt to make the mold sampler's Japanese manufacturer a part of the principal or third-party action.

party from whom indemnity is sought", *Langley v Harris Corp, supra,* p 601. An implied contract to indemnify arises only if there is "a special relationship between the parties or a course of conduct whereby one party undertakes to perform a certain service and impliedly assures indemnification". *Palomba v East Detroit,* 112 Mich App 209, 217; 315 NW2d 898 (1982). An express indemnity contract is construed strictly against its drafter and against the indemnitee; the indemnitor's obligation to indemnify the indemnitee must be described clearly and unambiguously. *Fireman's Fund American Ins Cos v General Electric Co,* 74 Mich App 318, 323-324; 253 NW2d 748 (1977); *Reed v St Clair Rubber Co, supra,* p 8.

The significance of the would-be indemnitee's personal negligence has been a subject of some confusion in the reported decisions of our state. It is universally recognized that a contract which purports to confer an express right to indemnification against the consequences of one's own negligence is subject to strict construction and will not be so construed unless the contract language clearly evidences that such was the intended effect. *Meadows v Depco Equipment Co,* 4 Mich App 370, 375-376; 144 NW2d 844 (1966); *Palomba v East Detroit, supra,* p 217. It is also beyond dispute that common-law indemnification is not available to a party who is not free from active negligence. *Langley v Harris Corp, supra,* p 597; *Palomba v East Detroit, supra,* pp 215-216; *Hill v Sullivan Equipment Co, supra,* p 696. This requirement of freedom from negligence applies with equal force to a claim for implied contractual indemnification. *Dale v Whiteman,* 388 Mich 698, 705; 202 NW2d 797 (1972); *Hill v Sullivan Equipment Co, supra,* pp 698-699 (dissenting opinion of Judge WALSH);

*Reed v St Clair Rubber Co, supra,* p 10.[3] A right to indemnity under a theory of implied contract can arise only from the conduct of the parties or from their special relationship; the requisite specificity and clarity required to give rise to a right to indemnity against the consequences of one's own negligence in the case of an *express* contract can never be found *by implication.*

We perceive the trial court's order as granting summary judgment for American (the alleged indemnitor) under GCR 1963, 117.2(1). (See fn 1, *supra.)* A motion for summary judgment under this subrule challenges only the legal sufficiency of the pleadings, not the adequacy of factual support for the opposing party's claim. A party is entitled to summary judgment under this subrule if the opposing party's claim is so clearly unenforceable as a matter of law that no factual development can possibly justify a right to recover. *Reed v St Clair Rubber Co, supra,* p 5.

Applying this standard, we affirm the trial court's determination that D-M-E had not stated a common-law indemnity claim. The principal plaintiff's complaint must be examined to determine whether D-M-E is alleged to have been actively negligent or merely vicariously liable, its liability being derived from the negligent acts of American. Only in the latter case would common-law indemnity be available. *Hill v Sullivan Equipment Co, supra,* pp 696-697.

In this case, the principal plaintiffs alleged two theories of recovery against D-M-E: negligence and breach of implied warranty of merchantability. Had the principal action proceeded to trial and

---

[3] To the extent that the *Hill* majority found that freedom from active negligence on the part of the indemnitee was not a prerequisite to the maintenance of a cause of action for implied contractual indemnity, we decline to follow it.

had the principal plaintiffs recovered on a negligence theory, common-law indemnity clearly would have been precluded. D-M-E's claim for common-law indemnity would have fared no better had the principal action ended with a determination that D-M-E was liable strictly on an implied warranty theory. In sole support of the claim that D-M-E had breached its implied warranty of merchantability, the principal plaintiffs alleged the mold sampler's defective manufacture or design. A finding of the seller's liability under this theory, which arises solely by operation of law and without regard to the seller's negligence, MCL 440.2314; MSA 19.2314,[4] could support a claim for common-law indemnity. It is clear, however, that D-M-E's implied warranty liability would have arisen from the conduct of the product's manufacturer and not from that of American. The claim for common-law indemnity, therefore, would have been against the manufacturer and not against American. For this reason summary judgment was properly entered for American on that theory.

Summary judgment was also entered for American on D-M-E's theory of implied contractual indemnity. D-M-E based its implied contract claim on a "special condition of sale" which was included, along with other special conditions and the terms of payment for the mold sampler, in a May 5, 1978, letter to American.[5] The pertinent condition provided:

"5. It will be the responsibility of American Model to employ proper safety procedures when using the Large

[4] *Piercefield v Remington Arms Co, Inc,* 375 Mich 85, 96-97; 133 NW2d 129 (1965). See also *Smith v E R Squibb & Sons, Inc,* 405 Mich 79, 89; 273 NW2d 476 (1979).

[5] According to D-M-E, the letter was delivered to American by hand at the time the mold sampler was delivered.

Mold Sampler. A suitable face shield, long gloves, protective apron, etc. must be used as safety protection for the operator."

It is not disputed that American did not employ those "proper safety procedures" described in ¶ 5 of the letter.

We are persuaded the summary judgment was improvidently granted to American on D-M-E's claim of implied contractual indemnification. The course of conduct between these parties was substantially similar to that in *Hill v Sullivan Equipment Co, supra,* where the third-party defendant, the employer of the plaintiff in the principal action, expressly rejected a proposed safety device and advised the third-party plaintiff, the manufacturer of the machine, that the machine would be inaccessible to workers. The Court found that these allegations satisfied the requirements of the statement of a cause of action for implied contractual indemnity.

American, which took possession of the mold sampler and made payment according to the terms of the May 5 letter, effectively agreed to comply with the specified conditions of sale. 1 Corbin, Contracts, § 62, p 257. See and compare *Ensign Painting Co v Alfred A Smith, Inc,* 385 Mich 268; 188 NW2d 534 (1971). Indeed, American has never denied that the May 5 letter constituted the parties' sales agreement but characterizes ¶ 5 as a mere "suggestion" or "instructions regarding proper use of the machine". We are not persuaded by American's restrictive characterization of this "special condition of sale". Paragraph 5 is not couched in directory terms but describes a mandatory contractual obligation. Closely analogous is *Proctor & Schwartz, Inc v United States Equip-*

*ment Co,* 624 F2d 771 (CA 6, 1980), where it was alleged that the contract between the third-party plaintiff, the manufacturer and seller of a machine, and the third-party defendant, the employer of the plaintiff in the principal action, provided that the latter was to furnish and install necessary safety devices on the machine which eventually caused the employee's injuries. The court found that the trial court had erred in granting summary judgment for the third-party defendant on third-party plaintiff's theory of implied contractual indemnity.[6] Similarly, we are persuaded that D-M-E has pleaded sufficient facts to state a claim for recovery of damages for injuries sustained as a result of American's failure to comply with ¶ 5.

In this case, a settlement was negotiated between the principal plaintiffs and D-M-E. The fact of settlement would not absolve American of its otherwise proven obligation of indemnity. *Lieberman v Solomon,* 24 Mich App 495, 501; 180 NW2d 324 (1970), *lv den* 384 Mich 769 (1970).

We conclude that the pleadings adequately support D-M-E's theory of implied contractual indemnity and that summary judgment was improvidently granted on that theory. In the third-party action, D-M-E must prove, prerequisite to proof of its indemnity claim itself, that it was in fact liable to the principal plaintiffs and, to satisfy the requirement of freedom from personal fault, that its liability was exclusively grounded on its breach of the implied warranty of merchantability. See 42 CJS, Indemnity, § 32, pp 613-620.

Affirmed in part; reversed in part; remanded for further proceedings consistent with this opinion.

---

[6] Our reliance on *Proctor & Schwartz* is limited. We disagree with the Court's rejection of the notion that fault is an "invariable bar" to recovery on a theory of implied contractual indemnity. 624 F2d 775.