**FISHBACH–NATKIN, INC., Plaintiff,**

v.

**SHIMIZU AMERICA CORPORATION and Maeda International d/b/a MKK Technologies, Defendants.**

**Civ. A. No. 93–70259.**

United States District Court, E.D. Michigan, Southern Division.

June 14, 1994.

Lee C. Patton, Sharon S. Almonrode, Sullivan, Ward, Bone, Tyler & Asher, Southfield, MI, for Fishbach–Natkin, Inc.

Bruce W. Franklin, Franklin & Leonard, Troy, MI, for Shimizu America Corp.

### *ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT*

GADOLA, District Judge.

On January 24, 1994, defendants filed the instant motion for summary judgment. Plaintiff filed a response March 24, 1994. Defendants filed a revised reply April 29, 1994.[1] Oral argument was heard June 8, 1994.

### I. Facts

Plaintiff Fishbach–Natkin, Inc. ("Fishbach–Natkin") instituted this action December 17, 1992 in Lenawee County Circuit Court. On January 20, 1993, defendants Shimizu America Corporation ("Shimizu") and Maeda International ("Maeda") removed the action to federal court alleging diversity of citizenship.

Plaintiff seeks indemnity and contribution for injuries and damages sustained by August and Barbara Rahe as a result of August Rahe falling through a hole in October 1988 while working on a construction project at Lenawee Stamping Plant. August Rahe was employed by a subcontractor, Belding Corpo-

---

**1.** Defendants' first reply brief was stricken as excessive in length.

ration, through the Iron Workers Local Union 85, to perform certain work at the construction site.

In 1987, Shimizu and Maeda entered into a joint venture (hereinafter referred to as "Shimizu/Maeda") to provide construction management and general contractor services at the Lenawee Stamping Plant Construction Project located at 1200 East Chicago Boulevard, Tecumseh, Michigan. On August 29, 1987, Shimizu/Maeda signed an agreement with the Lenawee Stamping Plant Corporation entitled "Construction Contract." At paragraph 10.2 of that agreement, Shimizu/Maeda agreed as the "Contractor" that it would

... secure and maintain at [its] expense appropriate General Public Liability, Worker's Compensation, Employer's Liability and such other insurance policies as are required by government authorities having jurisdiction over the Work, copies of which shall be separately provided to the Owner by the Contractor.

Also, attached to the Construction Contract were certain "Special Conditions." Those special conditions provided, *inter alia*, as follows:

Contractor's Responsibility for Personal *Injuries and Property Damages*

The CONTRACTOR shall indemnify and hold the OWNER harmless from and against liability for all loss and/or expense and/or damage and/or claims resulting from bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person or persons and/or on account of damage to or destruction of property including that of the OWNER, arising out of or in connection with the performance of work called for by this contract, including all work assigned to the CONTRACTOR under this contract, to the extent that such loss, expense, damage and/or claims be caused by or results from negligence or other culpable conduct of the CONTRACTOR, or any of its employees, agents or servants ex-

cept that anything to the contrary contained herein notwithstanding; the CONTRACTOR shall neither be responsible for nor relieve the OWNER from liability to the extent of the willful misconduct or the negligence of the OWNER or anyone for whom the OWNER is responsible, or any of their employees, agents or servants.

Exhibit A to Plaintiff's Response.

On August 4, 1987, Shimizu entered into an agreement with Fishbach–Natkin whereby the parties agreed that Fishbach–Natkin would act as General Services Contractor for the construction of the Lenawee Stamping Corporation's stamping plant. Specifically, the agreement defined the parties' relationship as follows:

Shimizu as General Contractor, or such other role as Shimizu shall designate, will be the sole point of contract with the Owner and have responsibility for the construction of the PROJECT. In addition, Shimizu shall be the party with whom all Subcontractors [sic] are made. [Fishbach–Natkin] as a General Services Subcontractor to Shimizu will supply personnel to Shimizu at such time and in such quantities as Shimizu may require to perform such duties as, but not necessarily limited to, labor relations, safety, security, communications, cleanup or any other service which may be required. It expressly is understood and agreed that Shimizu will be the sole judge of the requirement for and assignment of personnel and/or services and all F/N personnel will be subject to the direction of Shimizu management provided, however; [sic] that nothing contained herein shall be deemed or construed to render Shimizu liable for any acts or omissions of [Fishbach–Natkin] personnel not actually directed by Shimizu.

Exhibit G to Plaintiff's Response.[2]

Count I of plaintiff's complaint alleges that defendants, by virtue of the special circumstances surrounding the Construction Contract, impliedly agreed to indemnify plaintiff

---

2. Plaintiff submitted this document to the court at the June 8, 1994 hearing on this motion. For convenience, the court refers to the document as exhibit G to plaintiff's response. Plaintiff's other exhibits are labeled A through F.

for liability arising from a breach of defendants' duties with respect to maintaining safety at the site. Count I also alleges that plaintiffs are entitled to contribution, which allegation is further elaborated upon in Count III. Count II alleges that plaintiff is a third party beneficiary of the Construction Contract wherein defendants agreed to indemnify the stamping plant owner for any liability for personal injuries at the construction site. Count III alleges that defendants are joint tortfeasors with plaintiff and as such are liable for contribution. Count IV, the final count of the complaint, seeks indemnification and/or contribution for attorneys fees and costs on the same grounds as those set forth in Counts I through III.

When plaintiff commenced the instant litigation against defendants in December 1992, the case of *Rahe v. Fishbach–Natkin, Inc.*, case no. 91–5104–NP, was then pending before the Lenawee County Circuit Court with no determination of liability on the part of Fishbach–Natkin, Inc. having yet been reached. On March 30, 1993, Fishbach–Natkin, Inc. entered into a settlement agreement with August and Barbara Rahe. The settlement agreement, entitled "Release in Full," states

FOR THE SOLE AND ONLY CONSIDERATION OF TWO HUNDRED TEN THOUSAND ($210,000.00) DOLLARS, to [the Rahes] paid, [the Rahes] discharge FISCHBACH–NATKIN, INC. [sic], SHIMIZU AMERICA CORPORATION, MAEDA INTERNATIONAL and MKK TECHNOLOGIES, their successors and assigns, from all claims of any kind or character which [the Rahes] have or might have against them, ...

\* \* \* \* \* \*

It is further understood and agreed that the payment of said amount is not to be construed as an admission of liability upon the part of said persons, firms or corporations; liability being by him or them expressly denied.

All agreements and understandings between the parties hereto are embodied and expressed herein and the terms of this release are contractual and not a mere recital.

It is further understood that Fischbach–Natkin, Inc. expressly reserves its future contribution/indemnity action as set forth as follows:

FISCHBACK–NATKIN, INC [sic].... v. SHIMIZU AMERICA CORPORATION, ... and MAEDA INTERNATIONAL, ...; in the UNITED STATES DISTRICT COURT, EASTERN DISTRICT OF MICHIGAN, NORTHERN DIVISION; Case No. 93–CV–70259–DT before the Honorable Paul Gadola.

Exhibit E to Plaintiff's Response.

Plaintiff Fishbach–Natkin maintains that, for the reasons set forth in the complaint, it is entitled to indemnification and/or contribution with respect to the amount paid to the Rahes under the terms of the settlement agreement. Defendants, on the other hand, claim that they are not liable for contribution to the settlement because plaintiff failed to give defendants reasonable notice of the pendency of the settlement negotiations between plaintiff and the Rahes.[3] Defendants also claim that, as a matter of law, plaintiff cannot succeed on its common law or an implied contract claim for indemnification. Finally, defendants argue that plaintiff has no evidence that it was an intended third-party beneficiary of the Construction Contract between defendants and the Lenawee Stamping Plant owner.

## II. Standard of Review for Summary Judgment Motion

■ Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or

---

3. In their reply brief, defendants also argue that plaintiff has failed to properly plead its claim for contribution to the settlement agreement.

refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.1984) (quoting Black's Law Dictionary 881 (6th ed. 1979)) (citation omitted). The Court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 993, 8 L.Ed.2d 176 (1962); *Bender v. Southland Corp.*, 749 F.2d 1205, 1210–11 (6th Cir.1984).

▮▮▮ The movant bears the burden of demonstrating the absence of all genuine issues of material fact. *See Gregg v. Allen–Bradley Co.*, 801 F.2d 859, 861 (6th Cir.1986). The initial burden on the movant is not as formidable as some decisions have indicated. The moving party need not produce evidence showing the absence of a genuine issue of material fact; rather, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once the moving party discharges that burden, the burden shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. Fed.R.Civ.P. 56(e); *Gregg*, 801 F.2d at 861.

▮▮▮ To create a genuine issue of material fact, however, the nonmovant must do more than present some evidence on a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986),

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

(Citations omitted); *see also Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The standard for summary judgment mirrors the standard for a directed verdict under Fed.R.Civ.P. 50(a). *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511. Consequently, a nonmovant must do more than raise some doubt as to the existence of a fact; the nonmovant must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.*, 738 F.Supp. 214, 217 (E.D.Mich.1990), *aff'd*, 929 F.2d 701 (6th Cir.1991). The evidence itself need not be the sort admissible at trial. *Ashbrook v. Block*, 917 F.2d 918, 921 (6th Cir.1990). However, the evidence must be more than the nonmovant's own pleadings and affidavits. *Id.*

### III. Analysis

#### A. Count I and Count III—Contribution: Whether Plaintiff Gave Defendants Reasonable Notification of, and an Opportunity to Participate in, the Settlement Negotiations

▮▮▮ Under Michigan law, the right of contribution is provided by statute. *In re Air Crash at Detroit Metro. Airport*, 791 F.Supp. 1204, 1225–26 (E.D.Mich.1992), *citing Rewrink Bros. Star Silo, Inc. v. Clinton County Road Commissioners*, 161 Mich.App. 67, 70, 409 N.W.2d 725 (1987). The Michigan Contribution Act reads, in relevant part:

> (1) Except as otherwise provided in this act, when 2 or more persons become jointly or severally liable in tort for the same injury to a person or property or for the same wrongful death, there is a right of contribution among them even though judgment has not been recovered against all or any of them.

> (2) The right of contribution exists only in favor of a tort-feasor who has paid more than his pro rata share of the common liability and his total recovery is limited to the amount paid by him in excess of his pro rata share. A tort-feasor against whom contribution is sought shall not be compelled to make contribution beyond his own pro rata share of the entire liability.

(3) A tort-feasor who enters into settlement with a claimant is not entitled to recover contribution from another tort-feasor if any of the following circumstances exist:

(a) The liability of the contributee for the injury or wrongful death is not extinguished by the settlement.

(b) A reasonable effort was not made to notify the contributee of the pendency of the settlement negotiations.

(c) The contributee was not given a reasonable opportunity to participate in the settlement negotiations.

(d) The settlement was not made in good faith.

Mich.Comp.Laws.Ann. § 600.2925a.

In the instant case, the settlement agreement, by its terms, does release defendants from liability. Defendants make no claim that the settlement was not made in good faith.

Defendants, however, challenge whether plaintiff fulfilled requirements (b) and (c) of section 600.2925a(3). Defendants claim that they were not given sufficient notification that settlement negotiations were ongoing and therefore were not afforded an opportunity to participate in those negotiations. Plaintiff, on the other hand, claims that it did notify defendants of the settlement negotiations and invited defendants to participate in the negotiations. Plaintiff submits as evidence the affidavit of Colin H. John, Esquire, an attorney for plaintiff, attesting that he did notify defendants and invite them to participate in the settlement negotiations. Defendants, on the other hand, submit the affidavit of Bruce W. Franklin, Esquire, attorney for defendants, attesting that he never received adequate notification of the settlement negotiations and therefore was afforded no opportunity to participate.

The reasonableness of notification and the opportunity to participate in settlement negotiations must be evaluated on a case by case basis. *In re Air Crash,* 791 F.Supp. at 1229. In the instant case, the issue of what, if any, notification was given cannot be determined from a simple review of the record. Plaintiff alleges that at least one telephone call was made to notify defendants of the settlement negotiations. Defendants argue that, to be sufficient, notification must be in writing. The Michigan statute on contribution, however, does not require that notification be in writing. The issue of whether one telephone call (or more, if more ultimately is proven) is sufficient notification is obviously a genuine issue of material fact that precludes summary judgment on the contribution claim of Count I.

**B. Count I—Indemnification under Common Law and Implied Contract Theories: Whether There Exists No Genuine Issue of Material Fact**

Under Michigan law, a claim for indemnity may arise from three sources: the common law, an implied contract, and an express contract. *Gruett v. Total Petroleum Inc.,* 182 Mich.App. 301, 306, 451 N.W.2d 608 (1990). An indemnity claim under either common law or a theory of implied contract may be enforced only where liability arises vicariously or by operation of law from the wrongful acts of the party from whom indemnity is sought. *Id.*

"Common law indemnity is based on the equitable principle that where the wrongful act of one results in another being held liable, the latter party is entitled to restitution from the wrongdoer." *Skinner v. D-M-E Corp.,* 124 Mich.App. 580, 584, 335 N.W.2d 90 (1983), *quoting Hill v. Sullivan Equip. Co.,* 86 Mich.App. 693, 696, 273 N.W.2d 527 (1978), *lv. den.* 406 Mich. 880 (1979). The right to indemnity under common law is enforceable only where liability arises vicariously or by operation of law from the acts of the party from whom indemnity is sought. *Id.* 124 Mich.App. at 584–85, 335 N.W.2d 90, *quoting Langley v. Harris Corp.,* 413 Mich. 592, 601, 321 N.W.2d 662 (1982). A claim for indemnity under an implied contract theory exists only where there is "a special relationship between the parties or a course of conduct whereby one party undertakes to perform a certain service and impliedly assures indemnification." *Id.* 124 Mich. App. at 585, 335 N.W.2d 90, *citing Palomba v. East Detroit,* 112 Mich.App. 209, 217, 315 N.W.2d 898 (1982).

■ Thus, only a party who can plead and prove freedom from active fault is entitled to be indemnified under a common law or implied contract theory. *Gruett*, 182 Mich.App. at 306, 451 N.W.2d 608. In applying this principle, the Michigan courts have repeatedly held that in determining whether a party seeking common law indemnity is itself free from active negligence, a court must review the underlying complaint against that party as well as the complaint which seeks indemnity. *Id.; Oberle v. Hawthorne Metal Prod.*, 192 Mich.App. 265, 270, 480 N.W.2d 330 (1991); *Skinner*, 124 Mich. App. at 586, 335 N.W.2d 90. And, as a general rule, the courts have held that where the underlying complaint alleges that the party who now seeks indemnity is liable by virtue of its own active negligence, that party has no common law or implied contract right to be indemnified. *Gruett*, 182 Mich.App. at 306, 451 N.W.2d 608.

■ However, a trial court is not limited to considering *only* the primary plaintiff's complaint. *Peeples v. City of Detroit*, 99 Mich.App. 285, 293, 297 N.W.2d 839 (1980). Rather, the court should consider *all of the evidence* presented in order to decide whether the party seeking indemnity was guilty of active negligence. *Id.*

In its complaint against the defendants herein, Fishbach–Natkin alleges that it was not negligent and that Rahe's accident occurred as a result of defendants' negligence. Fishbach–Natkin further alleges that there existed a special relationship between Fishbach–Natkin and defendants, that arose out of the circumstances surrounding the Construction Contract, whereby defendants undertook the responsibility for safety at the construction site and impliedly assured Fishbach–Natkin of indemnification for injuries occurring at the worksite.

The underlying complaint between the Rahes and Fishbach–Natkin did allege active negligence on the part of Fishbach–Natkin. The case, however, was settled for a sum of $210,000 with a stipulation by the Rahes releasing Fishbach–Natkin, Shimizu and Maeda and agreeing that the settlement agreement "is not to be construed as an admission of liability. . . ." Exhibit E to Plaintiff's Response. Thus, there are allegations of negligence within the underlying complaint but the resolution of the case resulted in no determination of negligence. Most importantly, however, is that under the facts of this case, it is possible that Fishbach–Natkin was not guilty of active negligence with respect to Rahe's injury.

Defendants argue that where the underlying complaint alleges active negligence on the part of the party seeking indemnity, a court has no discretion but to grant summary judgment in favor of the party from whom indemnity is sought;[4] the court's reading of Michi

4. Defendants argue that *In re Air Crash, supra,* stands for this proposition. The facts of that case are distinguishable from the facts of this case. In the *Air Crash* case, the party seeking indemnity was the manufacturer of the aircraft who had been sued on a products liability theory. The relationship between the manufacturer of the plane and the operator of the plane offered little or no factual basis for a claim of common law indemnity. "Common law indemnity is intended only to make whole again a party held vicariously liable to another through no fault of his own." *Peeples*, 99 Mich.App. at 292, 297 N.W.2d 839. Where the manufacturer produces its product without breaching any of its duties and then the purchaser of the product engages in some act that causes injury, there can be no vicarious liability claim against the manufacturer because the owner/operator of the product stands between the injured and the manufacturer. Had the facts of the *Air Crash* been reversed, that is, had it been the manufacturer who was liable for a breach of its duty to the passenger and the operator who was not negligent but stood be

tween the manufacturer and the passenger, the outcome of the *Air Crash* case may have been different.

In the instant case, Fishbach–Natkin was hired by Shimizu/Maeda as General Services Contractor. In that capacity, Fishbach–Natkin stood between the employees and Shimizu/Maeda who was the true employer at the construction site. Thus, the facts of this case are more amenable to a vicarious liability claim by Fishbach–Natkin and against Shimizu/Maeda, than were the facts of the *Air Crash* case.

The facts of this case are more analogous to the facts of the *Peeples* case, *supra*. In *Peeples*, the plaintiff brought suit for personal injuries against the City of Detroit and the general contractor of the construction site at which the plaintiff of the underlying suit was working when he was injured. The underlying complaint alleged negligence on the part of the general contractor. The general contractor, nevertheless, was permitted to seek indemnity from the plaintiff's employer, a subcontractor of the general

gan case law, in particular the case of *Peeples v. City of Detroit, supra,* does not reveal this to be an accurate statement of the law of Michigan. Indeed, in the *Peeples* case, the Michigan Court of Appeals held that where there is evidence that the party from whom indemnity is sought had undertaken the responsibility for maintaining premises in a reasonably safe condition, summary judgment was not appropriate as a matter of law despite the fact that the underlying complaint alleged active negligence on the part of the party seeking common-law indemnity.

In *Peeples,* the plaintiff sought common-law indemnity and brought a motion for summary judgment on that claim. The trial court granted the plaintiff's motion for summary judgment. In reversing the trial court, the Michigan Court of Appeals noted that the underlying complaint had alleged active negligence against the plaintiff. The court held that the trial court was not limited to considering only the allegations of the underlying complaint but rather had "properly considered all of the evidence." The Michigan Court of Appeals reversed the trial court only to the extent that it found that there was a question of fact as to whether the party seeking indemnity was itself guilty of active negligence. It did not find, as a matter of law, that the underlying complaint's allegations of active negligence were sufficient by themselves to completely bar a claim for common-law indemnification. Indeed, this court believes that such a rigid rule would lead to unjust decisions. The law of Michigan is that no party that is itself guilty of active negligence may state a claim for common-law indemnification. To hold that a party to a lawsuit should be legally bound by the mere allegations of its opponent, regardless of the facts and circumstances surrounding a case, would constitute nothing less than judicial indifference to notions of fairness and fundamental principles of justice. Defendants would obviously agree that if the Rahe's complaint did not allege active negligence, defendants would not thereby be barred from defending the claim for common-law indemnification by alleging that Fishbach–Natkin was actively negligent.

The allegations of a complaint are merely that—allegations. Thus, in determining whether the party seeking indemnity was actively negligent, a court must review all of the evidence presented, including but not limited to the underlying complaint.

In circumstances such as these, this court cannot say that Fishbach–Natkin can prove no set of facts in support of its claim for common law or implied contract indemnification which would entitle it to relief. Whether Fishbach–Natkin was itself guilty of active negligence and whether the circumstances surrounding the contract created a common law or implied contract obligation on the part of defendants to indemnify plaintiff, remain issues for trial.

## C. Count II—Whether There Exists a Genuine Issue of Material Fact as to Plaintiff's Claim that It Is a Third Party Beneficiary to Defendants' Contract with the Owner of the Site

■ The complaint in the instant litigation also alleges a claim that defendants are under an express contractual obligation to indemnify Fishbach–Natkin. Fishbach–Natkin claims that it is a third party beneficiary to the contract between defendants and the owner of the Lenawee Stamping Plant wherein defendants agreed to indemnify the owner for all liability arising from personal injury or death at the construction site. Defendants claim that plaintiff has no evidence to support its claim that it was a third party beneficiary. Thus, the court shall analyze defendants motion as to Count II under the summary judgment standard of review as set forth *supra.*

Under Mich.Comp.Laws Ann. 600.1405,

[a]ny person for whose benefit a promise is made by way of contract, as hereinafter defined, has the same right to enforce said promise that he would have had if the promise had been made directly to him as the promisee.

(1) **Contracts included.** A promise shall be construed for the benefit of a person whenever the promisor of said promise had

contractor, on a common-law theory of indemnity which alleged that the subcontractor had undertaken the responsibility for maintaining the premises in a reasonably safe condition.

undertaken to give or do or refrain from doing something directly to or for said person.

The contract between defendants and the owner states that defendants agree to

indemnify and hold the OWNER harmless from and against all liability for all losses and/or expense and/or damage and/or claims resulting from bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person or persons and/or on account of damage to or destruction of property including that of the OWNER, arising out of or in connection with the performance of work called for by this contract, including all work assigned to the CONTRACTOR under this agreement, to the extent that such loss, expense, damage and/or claims be caused by or result from negligent conduct of the CONTRACTOR, or any of its employees, agents or servants. . . .

Exhibit F to Plaintiff's Response. Defendants also agreed with the owner that they would be responsible for job-site safety and worker supervision. In Article IV, Paragraph 4.3.1 of the contract between defendants and the owner of the stamping plant, defendants agree that they

shall supervise and direct the work, using [their] best skill and attention. [They] shall be solely responsible for all construction means, methods, techniques, sequences and procedures and for coordinating all portions of the Work under the Contract.

Exhibit C to Plaintiff's Response.

Plaintiff, however, points to no explicit promise by defendants that was specifically intended to benefit plaintiff.

Plaintiff argues that, "as the job-site facilitator, [plaintiff] stood in the shoes of the Owner and is, therefore, an intended beneficiary of Shimizu/Maeda's promise to indemnify the Owner against loss arising out of work-site conditions." Response at 10. Beyond this mere allegation, plaintiff offers no evidence as to how it "stood in the shoes" of the owner. Moreover, even assuming plaintiff could prove that it was the real party in interest with respect to the Construction

Contract, plaintiff still would not be able to recover as a third party to the contract. Third party status requires that there be an express promise to act to the benefit of the third party. Thus, the court finds that there exists no genuine issue of material fact as to Count II of the complaint. Therefore, defendants motion for summary judgment as to Count II shall be granted.

### D. Count III—Whether Plaintiff Has Failed to State A Claim for Contribution as a Joint Tort Feasor

By alleging that plaintiff has failed to plead the elements of a claim for contribution, defendants essentially allege that plaintiff has failed to state a claim upon which relief could be granted; on this issue, therefore, defendants motion for summary judgment shall be analyzed as a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6).

### (i). Standard of Review for Failure to State a Claim

 Upon a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), all allegations in the complaint are to be accepted as true and construed in favor of the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *United States v. Mississippi*, 380 U.S. 128, 143, 85 S.Ct. 808, 816, 13 L.Ed.2d 717 (1965). The court's inquiry is limited to whether the challenged pleadings set forth allegations sufficient to make out the elements of a right to relief. *Windsor v. The Tennessean*, 719 F.2d 155, 158 (6th Cir.1983), *cert. denied,* 469 U.S. 826, 105 S.Ct. 105, 83 L.Ed.2d 50 (1984); *Great Lakes Steel v. Deggendorf,* 716 F.2d 1101, 1105 (6th Cir.1983). The complaint should not be dismissed unless it appears without doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Lee v. Western Reserve Psychiatric Habilitation Ctr.,* 747 F.2d 1062, 1065 (6th Cir.1984).

### (ii). Analysis of Plaintiff's Claim for Contribution

 In their reply brief, defendants argue that plaintiff has failed to state a claim

for contribution to the settlement award because it has not alleged each of the elements of such a claim. Defendants cite to *Reurink Bros. v. Clinton Co.*, 161 Mich.App. 67, 409 N.W.2d 725 (1987) for the proposition that a plaintiff's failure to make specific allegations that (1) the plaintiff paid more than its *pro rata* share of the award, (2) the settlement extinguished the liability of the contributee, and (3) the plaintiffs made a reasonable effort to notify the contributee of the settlement negotiations, warrants summary judgment.

*Reurink* involved review of the trial court's *dismissal* of a complaint for failure to state a claim. The Michigan Court of Appeals held that not only did the *Reurink* complaint fail to specifically allege the elements of a claim for contribution to a settlement award, the facts surrounding the case indicated that the *Reurink* plaintiffs had no evidence to support their claim and thus could not have survived a motion for summary judgment, no less a motion to dismiss.

In *Paisley v. United Parcel Service, Inc.*, 38 Mich.App. 450, 456, 196 N.W.2d 813 (1972), cited by defendants for the proposition that a plaintiff must specifically plead that the parties are joint tort feasors, the Michigan Court of Appeals, in fact, held that a plaintiff must *either* make a specific allegation "*or an allegation of facts giving rise to such an inference.*" (emphasis added). Moreover, as stated *supra*, under federal law, the court's inquiry when reviewing a motion to dismiss for failure to state a claim is limited to whether the challenged pleadings set forth allegations *sufficient to make out the elements* of a right to relief. *Windsor v. The Tennessean*, 719 F.2d at 158 (emphasis added). Thus, the plaintiff need not specifically allege the elements; rather, it must allege facts that "make out," or support the elements.

In the instant case, the complaint was filed prior to the settlement agreement being reached in the underlying case. Thus, the allegations of the complaint seek indemnity and contribution to any liability that is ultimately found. It would be impossible for the court to dismiss plaintiff's claim seeking contribution to the settlement because the com-

plaint alleges no such claim. Therefore, the court, while denying defendants' motion to dismiss this claim, shall direct the plaintiff to amend its complaint to reflect the new factual circumstances of the case.

Defendants further argue that plaintiff has failed to allege that plaintiff and defendants were joint tort feasors. This, however, is not true. Count III of the complaint states, in the alternative, a claim for contribution under a theory of joint tort feasor liability.

> [I]f Plaintiff Fishbach–Natkin is held liable to August and Barbara Rahe, which such liability is denied, then Defendants Shimizu America and Maeda International are liable as joint tort feasors pursuant to MCLA 600.2925(a)
>
> . . . . .
>
> ... That should a judgment be rendered against the Plaintiff Fishbach–Natkin, the said Plaintiff demands full and complete contribution from the Defendants Shimizu America and Maeda International together with costs, interest and attorneys' fees.

Complaint at 6. As defendants submit, "[t]he doctrine of contribution implies that there are at least two wrongdoers, one of whom will be required to contribute to the other to apportion the joint or several liability." *In re Air Crash*, 791 F.Supp. at 1235.

Defendants argue that the *Air Crash* holding with respect to contribution is apposite to the case at hand. In the *Air Crash* case, cited *supra*, the court held that McDonnell Douglas Corporation could not obtain contribution from other tort feasors because a jury verdict had exonerated it from tort liability. Therefore, McDonnell Douglas was not a joint tort feasor and there could be no common liability for contribution.

In the instant case, however, plaintiff has not been exonerated from tort liability; rather, it has been released from liability with a stipulation that the payment of the settlement was not equivalent to an admission of liability. As stated *supra*, the issue of whether plaintiff was actively negligent with respect to August Rahe's injuries has not yet been adjudicated and therefore remains at issue in the case at hand. Thus, the court finds that plaintiff has properly alleged that

it and defendants were joint tort feasors. The court further finds that there remains a genuine issue of material fact as to the parties joint tort feasor status. Defendants motion for summary judgment on, and/or motion to dismiss, Count III shall be denied.

## ORDER

Therefore, it is hereby **ORDERED** that defendants' motion for summary judgment on Count I is **DENIED.**

It is further **ORDERED** that defendants' motion to dismiss Count III is **DENIED.**

It is further **ORDERED** that defendants' motion for summary judgment on Count III is **DENIED.**

It is further **ORDERED** that defendants' motion for summary judgment on Count II is **GRANTED.**

It is further **ORDERED** that plaintiff shall **AMEND** the complaint in this matter to reflect the present factual circumstances.

**SO ORDERED.**